## EX PARTE MARTHA BRADSTREET, IN THE MATTER OF MARTHA BRADSTREET, DEMANDANT.

Mandamus. In the district court of the northern district of New York, writs of right were prosecuted for lands lying in that district, and neither in the writs, or in the counts, was there an averment of the value of the premises being sufficient in amount to give the court jurisdiction. The tenants appeared, and moved to dismiss the cause for want of jurisdiction; which motion was granted. Subsequently, the demandant moved to reinstate the cases and to amend, by inserting an averment that the premises were of the value of five hundred dollars; which motion was denied by the court. The demandant also moved the court to compel full records of the judgments and orders of dismission, and of the process in the several suits, to be made up and filed, so that the demandant might have the benefit of a writ of error to the supreme court, in order to have its decision upon the grounds and merits of such judgments and orders. The district court refused this motion. On a rule in the supreme court for a mandamus to the district judge, and a return to the same, it was held, that the refusal to allow the amendment to the writ and count, by inserting the averment of the value of the property, was not the subject of examination in this court. The allowance of amendments to pleadings is in the discretion of the judge of the inferior court; and no control over the action of the judge in refusing or admitting them will be exercised by this court. The court granted a mandamus requiring the district judge to have the records of the cases made up, and to enter judgments thereon, in order to give the demandant the benefit of a writ of error to the supreme court.

In cases where the demand is not for money, and the nature of the action does not require the value of the thing demanded to be stated in the declaration, the practice of this court, and of the courts of the United States has been, to allow the value to be given in evidence.

This court will not exercise any control over the proceedings of an inferior court of the United States, in allowing or refusing to allow amendments in the pleadings, in cases depending in those courts; but every party in such courts has a right to the judgment of this court in a suit brought in those courts, provided the matter in dispute exceeds the value of two thousand dollars.

AT the January term of this court in 1832, on the motion of Mr Jones, counsel for the demandant, the court granted "a rule on the district judge of the district court of the United States for the northern district of New York, commanding him to be and appear before this court, either in person or by an

attorney of this court, on the first day of the next January term of this court, to wit on the second Monday of January, anno Domini 1833, to show cause, if any he have, why a mandamus should not be awarded to the said district judge of the northern district of New York, commanding him,

"1. To reinstate, and proceed to try and adjudge, according to the law and right of the case, the several writs of right and the mises thereon joined, lately pending in said court, and said to have been dismissed by order of said court, between Martha Bradstreet, demandant, and Apollos Cooper et al. tenants.

"2. Requiring said court to admit such amendments in the form of pleading, or such evidence as may be necessary to aver or to ascertain the jurisdiction of said court, in the several suits aforesaid.

"3. Or if sufficient cause should be shown by the said judge on the return of this rule, or should otherwise appear to this court, against a writ of mandamus requiring the matters and things aforesaid to be done by the said judge; then to show cause why a writ of mandamus should not issue from this court, requiring the said judge to direct and cause full records of the judgments or orders of dismission in the several suits aforesaid, and of the processes of the same, to be duly made up and filed, so as to enable this court to re-examine and decide the grounds and merits of such judgments or orders upon writs of error; such records showing upon the face of each what judgments or final orders dismissing, or otherwise definitively disposing of said suits, were rendered by the said district court, at whose instance, upon what grounds, and what exceptions or objections were reserved or taken by said demandant, or on her behalf, to the judgments or decisions of the said district court in the premises, or to the motions whereon such judgments or decisions were found; and what motion or motions, application or applications, were made to said court by the demandant, or on her behalf, and either granted or overruled by said district court, both before and after said judgments or decisions dismissing or otherwise finally disposing of said suits; especially, what motions or applications were made by said demandant or on her behalf to said district court, to be admitted to amend her counts in the said suits, or to produce evidence

[Ex parte Bradstreet.]

to establish the value of the lands, &c. demanded in such counts, together with all the papers filed, and proceedings had in said suits respectively." 6 Peters, 774.

The honourable Alfred Concklin, judge of the district court of the United States for the northern district of New York, appeared before the court, by Mr Beardsley his counsel; and, in pursuance of the rule, made the following statement as a return thereto.

"To the supreme court of the United States. In answer to a rule granted by your honourable court, the certified copy whereof, hereunto annexed, was on the 21st of December instant served upon him, the undersigned begs leave respectfully to state, as follows:

"1. That after the mises had been joined in the several causes mentioned in the rule, motions were made therein on the part of the tenants that the same should be dismissed upon the ground that the counts respectively contained no allegation of the value of the matter in dispute; and that it did not therefore appear by the pleadings that the causes were within the jurisdiction of the court. In conformity with what appeared to have been the uniform language of the national courts upon the question, and his own views of the law; and in accordance especially with several decisions in the circuit court for the third circuit (see 4 Wash. C. C. Rep. 482, 624), the undersigned granted these motions. Assuming that the causes were rightly dismissed, it follows of course that he ought not now to be required to reinstate them, unless leave ought also to be granted to the demandant to amend her counts.

"2. After the dismissal of these causes as above stated, motions were made therein on the part of the demandant, that the same should be reinstated, and that she should be permitted to amend her counts. These motions the undersigned considered it to be his duty to deny; and he can, perhaps, in no other manner more properly show cause why he should not now be required to do what he then refused to do, than by here inserting a copy of the opinion which he delivered upon that occasion. This opinion is as follows:

"'This cause having at a former term of the court been dismissed upon the ground that it did not appear upon the face of the demandant's count, that the case was one to which the

jurisdiction of the court extends, a motion has been made by the demandant, for leave to amend her count, and that the cause be reinstated in court. There are also a great number of other causes brought by the same demandant, standing in exactly the same predicament, and depending, of course, upon the decision of this. The question is therefore important, and by no means free from difficulty. Under these circumstances, and ample time having been afforded to the parties for thorough investigation, it was expected that the question would have been more fully and satisfactorily argued. It is incumbent upon me however now to decide it; and I shall proceed to perform that duty. The defect in question is clearly one in substance. It consists in the want of any averment in the count of the value of the land in dispute, an allegation, without which the court will not ever take jurisdiction of the cause.

"'The power of the national courts to grant amendments, depends upon the thirty-second section of the judicial act of September 24, 1789, which is as follows [this quotation is omitted as unnecessary to be here inserted]. With the exception of the last clause of this section, it is understood to relate exclusively to defects in matters of form. No proceeding in civil cases is to be rendered ineffectual by reason of any such defects; they are to be disregarded in giving judgment, except when especially set down as causes of demurrer; and are to be amended of course, without the imposition of conditions. To this extent the language of the section is also imperative. The last clause of the section however extends, in terms, to defects of every description in the process and pleadings, and confers upon the courts a discretionary power of permitting amendments therein upon such conditions as they shall direct. Without stopping then to ascertain the precise limits of this authority, it may be safely assumed that it extends to the case before the court; and the true question for decision is, whether this is a fit instance for its exercise. No affidavit has been furnished as the foundation of the motion; and I do not understand it to be pretended that there are any circumstances of a special nature, entitling the demandant to favour. Leaving out of view, therefore, for the present, a peculiarity affecting

the case which will be noticed in the sequel, the application presents the naked question, whether, as a general rule, the demandant in a writ of right ought to be allowed to amend a defect in substance.

"'It is wholly unnecessary to refer to adjudications in the English common pleas (in which court alone this action is cognizable in that country), to show how such an application would be there decided. No one in the least degree conversant with the settled usage of that court in this respect, can doubt that it would, without a moment's hesitation, be denied. But as one of the reasons for the great strictness which prevails in England (viz. the long period of limitation against this action), does not exist in an equal degree here, and as it is contended that this difference would of itself warrant a relaxation of the rules which govern there it is important to advert to a few of the English decisions, in order the more clearly to perceive to *what extent* this court would be obliged to depart from them, to permit an amendment in the present case. In the case of Charlwood v. Morgan, 4 Bos. and Pull. 64, a motion was made to amend the mistake of a Christian name in the count, founded upon an affidavit accounting for the mistake. The motion was however denied, upon the ground that there was no precedent to warrant such an amendment: the court at the same time declaring that they should have been willing to amend had not the case before them been a proceeding by writ of right. The demandant then asked leave to discontinue; but this was also refused. In the case of Maidment v. Jukes, 5 Bos. and Pull. 429, a sidebar rule to discontinue having been entered, the court ordered it to be set aside with costs.

"'And in the very recent case of Adams v. Radmay, 1 Marsh. 602, a motion was made, on the part of the demandant, for leave to quash the writ of summons to the four knights, on the ground that no previous notice of executing it had been served on the tenant's attorney. The application, it was urged, was made in the demandant's own delay, *ex majori cautela;* lest it should be objected that the tenant would have a right to challenge the four knights. But the motion was denied: Lord Chief Justice Gibbs declaring the rule adopted on consi-

deration to be, that the court will not assist a demandant in a writ of right in getting over any difficulties that may occur to him. And the other judges concurred in what he said.

" 'To this brief reference to English cases, I will only add, that as far as I have been able to discover, the records of English jurisprudence furnish no instance of a successful application by the demandant in a writ of right to amend.

" 'If then, in England, a demandant is not allowed to amend a mistake, even in a simple Christian name, though satisfactorily accounted for, if he is not permitted to quash his own proceeding to enable him to correct a slight informality, nor even to discontinue his own suit; if, in short, no aid whatever will be granted in any difficulty into which he may have the misfortune to fall; it is clear that to permit the amendment now applied for, would not only be a wide departure from the established rule in that country, but an unqualified rejection of it; for it would be placing the writ of right in this respect upon a footing of perfect equality with the most favoured actions. Still, however, could I find myself warranted in such a course by the decisions of the supreme court of this state, I should not hesitate to pursue it; though this is one of those questions upon which the decisions of the state courts are not deemed obligatory upon the national courts. But the only case of this nature in our own courts, referred to upon the argument, or which I have been able to find, is that of Malcolm v. Roberts, reported in 1 Cowen, 1. In that case the sheriff, in his return to a writ of right, had stated that he had made proclamation at the most usual door of the episcopal church in Beekman street, called St George's chapel, in the second ward of the city of New York, within which the tenements lay. The tenant having been called on the *quarto die post*, it was objected that the return was defective under the statute of this state, although in exact conformity with the English form of a return; in not stating that the church mentioned in the return was the *nearest* church to the tenements in question. The court having, after advisement, held the objection to be well taken, the question was, whether the sheriff should be permitted to amend his return in this particular, it being admitted that the church at which the proclamation was made, was in fact the nearest to the tenements, and that the proceeding in itself had therefore

been correct. It certainly is not easy to fancy a more favourable case than this for amendment, but I well remember the strenuous and very protracted argument to which the court deemed it their duty to listen before they determined to grant the application.

" 'It does not appear that any such case has arisen in England, nor does it by any means follow from the decisions of the common pleas, that even there such an application would be denied. Indeed, it is said in one of the cases above cited, that there might possibly arise a case in which an amendment would be permitted. The case of Malcolm v. Roberts, therefore, which I have already said is a solitary one in this state, does not warrant the conclusion that the strictness of the English practice in this respect had been relaxed; much less that it has been wholly repudiated here. It is true that one of the judges in that case remarked, that' the ancient strictness which prevailed in real actions had been much relaxed by the late decisions; and as evidence of such a change he stated, that he recollected a case in which, at the last term of the court, a default and grand cape having been taken, the default was set aside. I have searched for this case, but it does not appear to have been reported. But (admitting, which does not appear, that the case referred to by his honour was a writ of right), it is to be observed, that in that case it was the *tenant*, and not the demandant, who applied for relief. The indefatigable reporter, however, whose well known and useful practice it was to collect all the important decisions tending to confirm or illustrate the point decided, cites, in a note, the case of Van Bergen v. Palmer, 18 Johns. 504, in which the default of the demandant for not appearing upon the call of the tenant, was set aside upon an affidavit satisfactorily excusing the default. But this, upon examination, turns out to have been an action of *dower;* an action favoured in law, and to which less strictness has been applied. However the fact may be, therefore, it no where appears, as far as I have been able to discover, except in the dictum in Malcolm v. Roberts, above mentioned, that the ancient strictness against the *demandant in the writ of right* has been relaxed, even here: while it is abundantly evident from the recent case of Adams v. Radmay, cited above, (the latest case which I have found),

that no such relaxation has taken place in England. The writ of right is an ancient common law remedy, injudiciously adopted here, with all its cumbrous machinery and useless appendages; and in the absence of any authority for so doing, I fear I should hardly be warranted in denying that its peculiar disadvantages were also adopted along with it; and that he who chooses to resort to it, must be content to take it with all its imperfections on its head.

" 'But there is a peculiar feature in this case which remains to be noticed, and which ought not to be without influence upon its decision. By a recent statute of this state, the remedy by writ of right is wholly abolished. The present action was commenced *after the enactment* of this law, and just before it went into operation. Whatever room there may have been, therefore, before the passage of this act, for doubting whether this action ought to be viewed by our courts in the light in which it has already been regarded in England, as one by no means entitled to favour, but to be discouraged; no such doubt can now exist, since it has been abolished as an evil which ought no longer to be tolerated. But this is not all.

" 'I apprehend it may safely be assumed, that this act, taken in connexion with the rule of this court adopting the practice of the supreme court of this state, is to be regarded as applicable to this court; so that no new action by writ of right can now be prosecuted in this court. If this be so, it becomes a serious question whether this, of itself, does not, upon authority, constitute an insuperable objection to this application. By the dismission of the cause, the demandant has lost the power of further prosecuting it; and the application now is, first, for leave to insert in the court an allegation indispensable to her right of recovery in this court; and second, that the cause be thereupon reinstated, without prejudice in court. Now, there is no action in which the courts have been more liberal in permitting amendments than that of ejectment; insomuch, that it has been the uniform practice of the courts of England, as well as in this state, to allow new demises to be added, even after the lapse of several years.

" 'By an act of the legislature of this state, passed in 1813, suits against bona-fide purchasers for the recovery of military bounty lands, were required to be commenced be-

fore the 1st day of January 1823.   In the case of Jackson
v. Murray, 1 Cowen, 156, which was commenced *before* the
expiration of this period of limitation; an application was
made soon *after* its expiration, for leave to amend the de-
claration, by the insertion of a new demise.   This motion was
denied upon the ground, that such an amendment; without
which it was clear the plaintiff could not recover; would be
equivalent to a new action, and would therefore be in violation
of the act of limitation.   And this decision was afterwards re-
ferred to and vindicated by the court of errors.   Now, I am not
able to distinguish the case before me, in principle, from that.
Here, too, by an act passed in 1828, the right to prosecute by
writ of right was limited to the 1st of January 1830; and if, in
the case cited, to grant the amendment prayed for would have
been equivalent to permitting a new action to be commenced,
it would be no less so here.   Upon the whole, therefore, I am
of opinion, that it would be against authority, and indiscreet to
grant this motion, and it must accordingly be denied.'

   " 3.  After the denial of these motions, and at a subsequent
session of the court, motions were made by the demandant for
a rule requiring the tenants to make up and file records in the
several causes, for the purpose of enabling the demandant to
prosecute writs of error thereon.   The application was resisted
by the counsel for the tenants, upon the ground that no *final*
judgment had been rendered in these causes, subject to re-
vision by writ of error.   After taking time to examine and
consider the question thus presented, the undersigned denied
these motions, upon the ground assumed by the counsel for
the tenants.

   " With respect to this refusal to permit the demandant
to amend her counts, it is hardly necessary to remark that
as the application for this purpose was one, in its very
nature, addressed to the discretion of the court, it could
not be the foundation of a writ of error.   And with regard
to the dismissal of these causes for want of an averment
necessary to give the court jurisdiction, he supposed that
a decision having no reference whatever to the merits of
the controversy, which adjudicated nothing incompatible with
the right of the demandant to institute a new suit for the
same cause of action even in the same court, but which

merely declared that she had not shown as she was bound to do that her causes were within the jurisdiction of the court, and that on that account the court could not entertain them—could not be regarded as such a final judgment as could be reviewed by writ of error. A final judgment is defined to be an adjudication upon the question whether the plaintiff is entitled, or is not, to recover the remedy he sues for. But the adjudication in this case was, not that the demandant had no right to recover, but that she had not shown herself entitled *to sue in the forum* she had chosen. But even admitting this decision to have been a final judgment, and as such subject to revision by writ of error, still it is respectfully submitted that if your honourable court shall be satisfied that no error has in fact been committed, you ought not to require records to be made up, for no other purpose than to enable the demandant to prosecute writs of error which you already perceive must be fruitless. All which is respectfully submitted."

Mr Beardsley, in support of the return of Judge Concklin, stated, that the district court of the United States, for the northern district of New York, possesses the ordinary jurisdiction of a circuit, as well as a district court. Its judgments, when sitting as a *circuit* court, may be brought directly before this court for review, by writ of error. 4 Laws U. S. 679.

Martha Bradstreet, as demandant, prosecuted sundry writs of right in that court. Neither the original writs, or the counts in these causes, contained any *averment of the value of the premises* in question.

The tenants appeared and entered pleas in these causes.

Subsequent motions were made, on the part of the tenants, to dismiss these causes for want of jurisdiction. The motions were granted.

The demandant, at a later period, moved to reinstate the causes, and amend, by inserting an averment that the premises were of the value of five hundred dollars, &c. This motion was denied.

The court was also moved by the demandant to compel records to be made up in order that the judgments might be reviewed by writ of error. These motions were also refused.

On affidavits disclosing these facts, this court made a rule

at the last term, requiring the judge of the district court to show cause why a mandamus should not issue to compel him,

1. To *reinstate and try* these causes, &c.

2. To permit such amendments to be made in the pleadings as may be necessary to aver jurisdiction.

3. Or to require records to be made up and filed, so that this court may bring up the judgments by writ of error, &c.

To this rule the judge has answered, and has presented the statement which is filed.

1. The first inquiry is, did the court below decide right in refusing to permit the amendment to be made?

The defect is one of *substance*, not of *form;* and it is not therefore amendable *of course.* 1 Paine, 486. It might, perhaps, well be doubted whether a court can, in any case, amend in a matter necessary to give jurisdiction. It is, however, believed, that a different rule has prevailed in the courts of the United States, and therefore the proceeding will not, at this time, be called in question.

It is then assumed that the court below had power to make this amendment. It also had power to refuse to make it. No special grounds were shown for granting these applications to the court below : no affidavit, in fact, was presented as a foundation for the motion. Would the court grant it without affidavit? proof? It was in the discretion of the court.

Has a demandant, in a writ of right, *a right* to amend of course, on mere motion, without showing any cause, in a matter of substance? 1 Paine, 492. The answer of the judge cites the authorities. 4 Bos. and Pull. 64; 5 Bos. and Pull. 429; 1 Marshall, 602; 1 Cowen, 1.

There is a further objection. Before these causes were commenced, a statute was passed in New York abolishing writs of right, after a certain day, and which day arrived before the motions to amend were made. When the motions to amend, therefore, were made, such actions could not be brought in New York in its own courts. That statute was equally applicable to the district court; so that no writ of right could *then* be prosecuted in that court.

This was a good objection to the amendment. The amendment would have been an evasion of the statute abolishing writs of right : it would, in effect, have given an action which

had been abolished,—virtually repealing the statute. Cited by the judge, 1 Cowen, 156; 2 Durn. and East, 707, 708; 6 Durn. and East, 171, 548; 17 John. 346.

It is submitted that the district judge, in refusing to allow the amendments, decided correctly. But if he did not, this court will not proceed by a mandamus to correct his errors. Such a proceeding is not an exercise of original jurisdiction; and if it is the employment of the appellate power of this court, it cannot be used in this form. Congress may extend the powers of this court to any cases under the constitution of judicial cognizance; but they have not given the power by proceedings for a mandamus to examine into the action of the inferior courts in matters of this description. The power to issue a mandamus exists under the fourteenth section of the judiciary act of 1789, and it does not comprehend this case. The writ of mandamus is never used for such purposes.

It does not lie to control or coerce the discretion of a subordinate tribunal. 1 Wend. 299; 1 Cow. 423; 2 Cow. 458, 483; 6 Cow. 393; 7 Cow. 363, 523; 1 Paine, 453.

No doubt is entertained of the power of this court to award a mandamus for the *last* purpose indicated in the rule; that is, *to compel records to be made up and filed.* 1 Paine, 455. This court may review the judgments of the district court by writ of error. But no such judgment can be brought up until a record has been filed.

This court may compel such record to be filed. That power is " necessary," to enable this court to exercise its jurisdiction by writ of error. The writ of mandamus is, for that purpose, " agreeable to the principles and usages of law." This court then, for that purpose, may award it. For that purpose the parties interested in this case have no objection that it should issue.

What will it bring up? A judgment of the court dismissing the cause for want of jurisdiction. If that judgment was correct, it must be affirmed. Let it be brought here if the demandant asks it. Whether it is a *final* judgment, has not been examined; nor is it regarded as material. Perhaps, however, the better opinion is, that it is not a final judgment.

Judgments of nonsuit cannot be removed by writ of error.

[Ex parte Bradstreet.]

3 Dall. 401; 4 Dall. 22; 4 Wheat. 73; 5 Cranch, 280; 7 Cranch, 152.

On a writ of error to an inferior tribunal, which had given a judgment on the merits, if it appears from the pleadings that the court below had no jurisdiction, this court cannot award a venire de novo. 3 Dall. 19. Then why require a record to be made out? These matters are stated not as objections; for none are made, if these were in fact final judgments. So far the jurisdiction of this court is conceded.

But it may perhaps be said on the other side, that the judgments which have been rendered are not *final* judgments; and therefore not removable by writ of error. That it is therefore proper to compel the court to reinstate and try the causes, to the end that *final* judgments may be rendered. 6 Wheat. 601, 602; 6 Peters, 657; 2 Laws U. S. 64, 22.

For what end reinstate, try and determine them? If judgments should pass in favour of the demandant, they would be erroneous. She therefore cannot desire such judgments. The pleadings being defective, and fatally so; she cannot possibly have a valid judgment on them. If rendered in her favour it would be erroneous: if rendered against her, she could not reverse it. No venire de novo could be awarded in such case. 3 Dall. 19.

But if this court may compel the court below by mandamus to reinstate and try the causes, and render *final* judgments therein; yet it cannot, as it is supposed, compel that court to grant the *amendments* asked for. The judgments will be just as *final* without as with the amendments.

It has already been said that a mandamus does not lie to coerce the *discretion* of a subordinate tribunal. Now it is insisted that it was *discretionary* with the court below to make, or refuse to make this amendment. That the question was for that court *alone*, and that it cannot be controlled here.

Under the act of congress, amendments, like the one in question, are not demandable of right.

1. The judiciary act of 1789 (sect. 32), in its first clause, declares that no summons, &c. shall be abated, &c. " for any defect or *want of form*." But this is not a *formal* defect, it is one of *substance*.

[Ex parte Bradstreet.]

2. That section declares that the court *may* amend *any* defect upon such conditions as the court, in *its discretion,* shall prescribe. This section gives perhaps full power to the court below to make the amendment. But it is to be made *on condition;* such condition as the court *in its discretion* shall prescribe.

Permitting amendments is a matter of discretion. Cited, 5 Cranch, 17, 2 Peters's Cond. Rep. 175; 6 Cranch, 267, n.; 6 Cranch, 217, 2 Peters's Cond. Rep. 351; 9 Wheat. 576; 11 Wheat. 280; 3 Peters, 32; 6 Peters, 656; 1 Paine, 456, 457.

The court below therefore is not compellable by mandamus to allow them.

It is then submitted to the court:

1. That the court below decided correctly in refusing the amendment—it being a writ of right. It would not have been made in England. It should not have been made when moved, as no writ of right could *then* have been prosecuted in New York.

2. It was not at all courts a matter resting in the discretion of that court, which cannot be controlled by a mandamus.

Mr Jones, for the defendant.

Mr Chief Justice Marshall delivered the opinion of the Court.

After hearing counsel, and considering the cause shown by the honorable the judge for the court of the United States for the northern district of New York; this court is of opinion that it ought not to exercise any control over the proceedings of the district court in allowing or refusing to allow amendments in the pleadings; but that every party has a right to the judgment of this court in a suit brought by him in one of the inferior courts of the United States, provided the matter in dispute exceeds the sum or value of two thousand dollars.

In cases where the demand is not for money, and the nature of the action does not require the value of the thing demanded to be stated in the declaration, the practice of this court, and of the courts of the United States, is, to allow the value to be given in evidence. In pursuance of this practice, the demandant in the suits dismissed by order of the judge of the district court, had a right to give the value of the property demanded in evidence, at or before the trial of the cause; and would

have a right to give it in evidence in this court. Consequently he cannot be legally prevented from bringing his case before this tribunal. The court doth therefore direct that a mandamus be awarded to the judge of the court of the United States for the northern district of New York, requiring the said judge to reinstate, and proceed to try and adjudge according to the right of the case, the several writs of right, and the mises thereon joined, lately pending in said court, between Martha Bradstreet, demandant, and Apollos Cooper et al. tenants.

The following mandamus was issued by order of the court.

United States of America, ss.

To the honourable Alfred Concklin, judge of the district court of the United States for the northern district of New York, greeting :

Whereas, one Martha Bradstreet hath heretofore commenced and prosecuted, in your court, several certain real actions, or writs of right, in your court lately pending between the said Martha Bradstreet, demandant, and the following named tenants severally and respectively, to wit, Apollos Cooper and others [naming them]. And whereas, heretofore, to wit, at a session of the supreme court of the United States, held at Washington on the second Monday of January in the year 1832, it appeared, upon the complaint of the said Martha Bradstreet, among other things, that at a session of your said court, lately before holden by you, according to law, all and singular the said writs of right then and there pending before your said court, upon the several motions of the tenants aforesaid, were dismissed for the reason that there was no averment of the pecuniary value of the lands demanded by the said demandant in the several counts filed and exhibited by the said demandant against the several tenants aforesaid ; which orders of your said court, so dismissing the said actions, were against the will and consent of said demandant : whereupon the said supreme court, at the instance of said demandant, granted a rule requiring you to show cause, if any you had, among other things, why a writ of mandamus from the said supreme court, should not be awarded and issued to you, commanding you to reinstate and proceed to try and adjudge, according to the law and right of the case, the several writs of right aforesaid, and the mises therein joined. And whereas, at the late sess-

[Ex parte Bradstreet.]

ion of the said supreme court held at Washington on the second Monday of January in the year 1833, you certified and returned to the said supreme court, together with the said rule, that after the mises had been joined in the several causes mentioned in the said rule, motions were made therein, on the part of the tenants, that the same should be dismissed upon the ground that the counts respectfully contained no allegation of the value of the matter in dispute, and that it did not therefore appear, by the pleadings, that the causes were within the jurisdiction of the court: that, in conformity with what appeared to have been the uniform language of the national courts upon the question, and your own views of the law, and in accordance especially with several decisions in the circuit court for the third circuit (see 4 Wash. C. C. Rep. 482, 624), you granted their motions; and assuming that the causes were rightly dismissed, it follows of course that you ought not to be required to reinstate them, unless leave ought also to be granted to the demandant to amend her counts: and whereas, afterwards, to wit at the same session of the said supreme court last aforesaid, upon consideration of your said return and of the cause shown by you therein against the said rule's being made absolute, and against the awarding and issuing of the said writ of mandamus, and upon consideration of the arguments of counsel, as well on your behalf, showing cause as aforesaid, as on behalf of the said demandant, in support of the said rule, it was considered by the said supreme court, that you had certified and returned to the said court an insufficient cause for having dismissed the said actions, and against the awarding and issuing of the said writ of mandamus, pursuant to the rule aforesaid; the said supreme court being of opinion, and having determined and adjudged upon the matter aforesaid, that in cases where the demand is not made for money, and the nature of the action does not require the value of the thing demanded to be stated in the declaration, the practice of the said supreme court, and of the courts of the United States, is to allow the value to be given in evidence: that, in pursuance of this practice, the demandant in the suits dismissed by order of the judge of the district court, had a right to give the value of the property demanded in evidence, either at or before the trial of the cause, and would have a right to give it in evidence

in the said supreme court; consequently that she cannot be legally prevented from bringing her cases before the said supreme court; and it was also then and there considered by the said supreme court that the peremptory writ of the United States issue requiring and commanding yon, the said judge of the said district court, to reinstate and proceed to try and adjudge, according to the law and right of the case, the several writs of right and the niises therein joined, lately pending in your said court between the said Martha Bradstreet, demandant, and Apollos Cooper and others, the tenants aforesaid: therefore, you are hereby commanded and enjoined, that immediately after the receipt of this writ, and without delay, you reinstate and proceed to try and adjudge, according to the law and right of the case, the several writs of right and the mises therein joined, lately pending in your said court between the said Martha Bradstreet, demandant, and the said Apollos Cooper and others, the tenants herein above named, so that complaint be not again made to the said supreme court; and that you certify perfect obedience and due execution of this writ to the said supreme court, to be held on the first Monday in August next. Hereof fail not at your peril, and have then there this writ.

Witness the honourable John Marshall, chief justice of said supreme court, the second Monday of January in the year of our Lord one thousand eight hundred and thirty-three.

W. T. CARROL,<br>Clerk of the supreme court of the United States.