## THE GERMAN EVANGELICAL SOCIETY

### *v.*

## PROSPECT HILL CEMETERY.

---

PRACTICE; AMENDMENTS; CORPORATIONS.

1. The allowance or refusal of leave to amend a pleading, is within the discretion of the court to which the application is made, and is not reviewable in an appellate court.
2. A corporation organized by and consisting of a number of the members of another corporation, cannot, as a corporation, obtain redress in equity in proceedings against such other corporation for grievances alleged to have been committed against its members by the latter corporation, when, as to the grievances alleged, the corporations are strangers to one another.

No. 148. Submitted January 4, 1894.—Decided February 5, 1894.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia, holding an equity term, dismissing a cross-bill in a suit for the cancellation of a deed and a recorded subdivision of real estate, and an injunction. *Affirmed.*

The COURT in its opinion stated the case as follows:

In the year 1847, it is said, there was formed in the city of Washington a voluntary, unincorporated association of a religious character, apparently known by the name of the German Evangelical Society. In or before the year 1858, the association being desirous to secure a tract of land for a burial place for its members, purchased for that purpose a piece of ground in the suburbs of the city of Washington,

known as Prospect Hill, containing about seventeen acres of land, the title to which was taken in the name of two trustees, who were members of the association.  The deed of conveyance provided that the grantees were to hold the land for the purpose of a cemetery and that whenever the association should procure an act of incorporation from Congress, they should then convey the property to such corporation, or to the persons who should be designated by the act. The act of incorporation was procured on June 13, 1860 (U. S. Stat., Vol. 12, p. 32).   It constituted seven persons by name, who were then according to the act " the present members of the German Evangelical Society, and their successors in said Society," a body corporate by the name of the Prospect Hill Cemetery, in the District of Columbia, for the purpose of holding and managing a cemetery of not less than seventeen acres, north of the limits of the city of Washington; and it provided, among other provisions, not necessary here to be enumerated, that the affairs of the corporation should be managed by a board to be composed of the president, secretary and six directors to be elected annually by a majority of the votes of said society; and that in all elections held under the act, each proprietor of a lot should be entitled to one vote.

It is claimed by the appellant in this case, that this act of incorporation was never accepted by the German Evangelical Society, or by the persons named in it; but this contention, although sought to be maintained in the brief filed on behalf of the appellant, was abandoned on the argument. And it is now distinctly admitted, for the purposes of the present hearing, that the act of incorporation was accepted and acted upon, and that the society proceeded to deal with the land purchased for a cemetery under the provisions of this charter.

There does not seem, however, to have been a very strict compliance with some of the provisions of the charter.   Instead of a board of management composed of a president, secretary and six directors, they seem for fifteen years to

have elected only seven directors, including therein the president and secretary; and the organization that was continued to be carried on during that time, seems to have been rather that of the German Evangelical Society than that of the Prospect Hill Cemetery. The name, too, of the voluntary association, seems to have had some remarkable fluctuations, it being at different times the German Evangelical Society, the German Beneficial Society, the German Benevolent Society, the German Lutheran Church Society, the German Beneficial Association of the Evangelical Church of the Concordia, the German Beneficial Society of the German Evangelical United Church Congregation in Washington, and again and for the second or third time, the German Evangelical Society, and possibly there may have been other names that have escaped our attention.

The deed of conveyance, which was required to be made by the trustees, in whose names the Prospect Hill Cemetery property had been purchased in 1858, was executed by them on June 10, 1873, to the Prospect Hill Cemetery, the corporation created by the act of Congress of 1860 and the complainant in this cause. But this fact seems to have been unknown to the persons who caused the bill of complaint in this cause to be filed, or to have been forgotten by them; for they allege in the bill that there had been no conveyance, but that the use had become executed in the company upon its organization under the act of Congress. This statement, however, was corrected in an amended bill filed in the cause.

In the early part of the year 1885 difficulties arose. It seems that some persons, who were not members of the German Evangelical Society, or the voluntary organization, by whatever name it was then known, had become lot-holders in the cemetery; and they claimed under the act of Congress to be entitled to a voice in the management of the cemetery, from which hitherto they had been excluded, and against which they had complained. After a refusal at first, and considerable ensuing negotiation, as well as overhauling of the charter, the claim of the lot-holders was allowed, and

the board of management was reorganized, so as to comprise representatives both of the German Evangelical Society and of the lot-holders, who were not members of that society.

There was dissatisfaction, however, in the society with this arrangement, and the dissatisfaction grew until it culminated in the separate incorporation of the society or of its members, under the general incorporation act of Congress in force in the District of Columbia, by a certificate of incorporation filed by them on December 16, 1886. Being, like the directors of the other company, the Prospect Hill Cemetery, in ignorance of the conveyance made by the trustees in 1873, they immediately called upon these trustees to make a conveyance of the cemetery tract to this new organization; and the trustees complied with the demand, and on December 17, 1886, executed a deed of conveyance of this tract to the German Evangelical Society, assuming that the society was entitled to it under the trusts created in 1858. Following this, on March 17, 1887, the German Evangelical Society, the new corporation, filed a new subdivision of the cemetery property, marked a part of it for sale, and thereby subjected it, so far as they could, to assessment and taxation, and to the liability of having part of it taken for the opening of a street.

These transactions of the German Evangelical Society, as a body corporate claiming to own the cemetery property, the old corporation, the Prospect Hill Cemetery, regarded as an invasion of its rights, and as tending to cast a cloud upon its title and to prevent the sale of burial lots; and thereupn it filed the bill of complaint in this cause to have the deed made to the German Evangelical Society and the subdivision recorded by that society, declared to be null and void, and to enjoin that society from further interference with the property.

To this bill of complaint, the defendant corporation, the German Evangelical Society, filed an answer and also a cross-bill, the substance of both of which was that the " Pros-

pect Hill Cemetery" company had never been duly organized under the act of Congress of 1860; that even if that company had been duly organized under that act, its organization had become irregular and illegal by the participation in it of persons who were not members of the German Evangelical Society; that the voluntary association known by the latter name was the true owner of the cemetery property, and that when they became incorporated by that name and the property was conveyed to such new corporation, the trust of 1858 was duly performed. And the prayer of the cross-bill was that the parties filing the original bill should be enjoined from calling themselves Prospect Hill Cemetery, and from proceeding to the election of any directors for such company; and that the directors elected by the German Evangelical Society should be decreed to be entitled to the property, books, papers and management of the cemetery company. An answer was filed to the cross-bill and to both answers there was a replication. Thereupon testimony was taken, and the cause came on for a hearing. After it had been set down for a hearing, a motion was made on behalf of the German Evangelical Society for leave to amend the cross-bill. The proposed amendment was to the effect that the present members of the German Evangelical Society were the legal successors of those named in the act of Congress of 1860; that to them alone it belongs of right to use the name of "Prospect Hill Cemetery" as a corporate designation; and that the persons now coming into court under that name, and who have obtainèd the possession and control of the property, do not constitute and have never constituted the corporation.

This motion to amend was denied on November 17, 1892; and on November 25, 1892, a final decree was rendered in favor of the original complainant, cancelling the deed from the trustees to the new incorporation, as well as the subdivision made by this incorporation on March 17, 1887, and dismissing the cross-bill. From this decree, the defendant, the German Evangelical Society, appealed to the general

term of the Supreme Court of the District of Columbia; and the appeal has been transferred by operation of law to this court.

*Mr. William A. Meloy* for the appellant.

*Mr. Wm. F. Mattingly* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

The appellant in its brief assigned three assignments of error: 1st. That it was error to hold that the German Evangelical Society had become incorporated by a sufficient acceptance of the act of Congress of 1860; 2d. That it was error to refuse such amendment of the cross-bill as would lay the foundation for a prayer for such relief as might appear to be proper; 3d. That it was error to hold that in a court of equity inquiry could not be made into the right of plaintiffs to assume the name of " Prospect Hill Cemetery," by virtue of the votes of persons not members of the German Evangelical Society.   But in the argument of the cause in this court, in view of the voluminous testimony which it was unwilling to cause to be printed, the appellant abandoned the first and third assignments of error, and relied on the second alone, having printed only such portions of the testimony as were deemed necessary for the proper understanding of that assignment.

The only question, therefore, that is distinctly and specifically presented to us here is, whether it was error in the court below to refuse to allow an amendment of the cross-bill.   And the statement of that question would seem to be a sufficient answer to it.   For it is well settled law, sufficiently well settled to be almost elementary, that the allowance or refusal of amendment is a matter in the discretion of the court below, and is not reviewable in an appellate tribunal.   *Matheson* v. *Grant,* 2 How., 263 ; *United States* v. *Buford,* 3 Pet., 12 ; *Wright* v. *Hollingsworth,* 1 Pet., 165 ; *Ex parte Bradstreet,* 7 Pet., 634 ; *Spencer* v. *Lapsley,* 20 How., 264 ; *Hardin* v. *Boyd,* 113 U. S., 756.   Most of the cases

upon this point arose upon the allowance of amendments; and the allowance of amendments is certainly, in most cases, a more just ground for complaint than the refusal to allow them; for the allowance of amendments more or less affects the issues between the parties, while the refusal of amendment leaves the parties to the issues which they themselves have deliberately and advisedly made.

Counsel for the appellant, however, has argued this case as though the second assignment of error practically included the third; and upon the assumption that the court below held that it could not inquire in this cause into the regularity of the election of the persons claiming to be directors of the " Prospect Hill Cemetery," and that a court of common law was the proper tribunal to determine that question under a writ of *quo warranto*, much of the argument was addressed to the inadequacy of *quo warranto* to give the necessary relief. Plainly we cannot follow counsel in this argument. The decree of the court below, in dismissing the cross-bill, does not in itself show upon what ground it is based; and it is not apparent from the copy of the opinion of the justice who decided the case, which has been furnished to us, that he based his decision upon any such ground. On the contrary, he seems to have based it upon other and entirely different grounds. He held, and very properly held, " that the members of the voluntary beneficial society are not parties to this cause, and that the entity, known as the cemetery association, incorporated under the name of the German Evangelical Society, cannot, under the charter of 1860, have any voice whatever in the management of Prospect Hill Cemetery, or any interest or right that would enable it legally to question any act of that corporation, not directly affecting the defendant corporation."

Although denied in the answer and cross-bill, it is conceded now in argument that, in 1860, the members of the German Evangelical Society became incorporated under the act of Congress of that year by the name of " Prospect Hill Cemetery "; that the act of Congress was accepted and acted

upon by that organization; that the organization took pos-
session of the cemetery property; that a deed of conveyance
of the property was made to it; and that it has ever since
remained in charge and control of the property.   And the
sole gravamen of the appellant's contention is, that in 1885
such irregularities and illegalities supervened in the manage-
ment as that its subsequent conduct was not in accordance
with the charter of 1860.   If this contention be well founded
—and we are not called upon to express any opinion upon
the point, especially in the absence of the testimony in this
cause—the persons aggrieved, who are the individual mem-
bers of the German Evangelical Society, and not any other
corporate organization which they may have thought proper
to create, are not without remedy for their grievance; and
the remedy is not necessarily by writ of *quo warranto.*

Upon the concession already made, that the company
known as the "Prospect Hill Cemetery" was properly or-
ganized, accepted the act of Congress, took possession of
the property in suit, and received a deed of conveyance of it,
it is not apparent how any other company could be properly
organized to take the property away from it without its con-
sent.   If the company known as the "Prospect Hill Ceme-
tery" is improperly managing its trust, if improper persons
have been admitted into its meetings, and its directors have
been illegally and improperly chosen, and the management
has been virtually taken away from those who are supposed
to be exclusively entitled to it, that is a condition of things
which can be remedied by appropriate proceedings insti-
tuted for the purpose.   It is not a matter that can be set up
by a total stranger, a trespasser or interloper, such as this
new organization, so far as this cause is concerned, must be
held to be, no matter by whom organized or who may be its
members.

The German Evangelical Society, organized as a body
corporate in 1886, is not in law the same as the voluntary
association that organized the "Prospect Hill Cemetery"
company.   It is, in contemplation of law, a new entity, then

for the first time springing into existence; and it could acquire no right, by reason of any right supposed to be in its component members, to intrude upon the rights of the "Prospect Hill Cemetery" company.

Upon the record that has been presented to us, we are of opinion that there is no error in the decree of the court below; *and that decree must therefore be affirmed, with costs.*