74 U.S. 364 (____)
7 Wall. 364
EX PARTE BRADLEY.
Supreme Court of United States.

*370 The case was elaborately argued by Mr. P. Phillips (with whom was Mr. Carlisle) for the relator. No counsel appeared in behalf of the Supreme Court of the District, which rested on its return; a document in form argumentative.
Mr. Justice NELSON delivered the opinion of the court.
One of the grounds set up in the return to the rule to show cause is, that on the 10th of August, 1867, while Judge Fisher, one of the justices of the Supreme Court, was holding a criminal court in this district, the relator had been guilty of contemptuous language towards the said judge in the progress of a trial therein, and for which the said justice disbarred him from the privileges of attorney and counsellor of the Supreme Court. That, at the time of the committing of the contempt, Judge Fisher was holding, not a criminal, but a Supreme Court, and exercising its criminal jurisdiction as such; that there is no criminal court in this district, and, therefore, no judge of a criminal court; and that the contempt committed before the judge was a contempt of the Supreme Court. That the act of March 3d, 1863, abolished both the circuit and criminal courts of the district, and conferred all their powers and jurisdiction upon the Supreme Court created by the act.
We think a reference to this act of March 3d, 1863, reorganizing the courts in this district, will show that this is an erroneous construction. It will be seen, by reference to *371 this organic act, that the new Supreme Court of this district has conferred upon it only the same powers and jurisdiction as was possessed by the circuit court just abolished. This circuit court possessed, at the time, no original criminal jurisdiction whatever, nor had it, since the 7th of July, 1838; for an act of that date established a criminal court, upon which was conferred all the criminal jurisdiction of the district.
A writ of error lies from the circuit court to this criminal court, and, doubtless, does from the present Supreme Court to the criminal court of the district.
The circuit court had originally been invested with all the powers of a district court of the United States; but these were taken from it in 1802, and a district court established within the district, to be held by the chief justice of the circuit court. These courts, the district and criminal, are preserved by the act of 1863 reorganizing the courts, and are to be held in the same manner, and with the same powers and jurisdiction,  the one as possessed by the district courts of the United States, and the other as possessed by the old criminal court of the district. The only change made is, that instead of each court having a judge or judges appointed to hold it, any justice of the Supreme Court may hold the same. Under the old law, 20th of February, 1839, in case of the inability of the judge of the criminal court to hold the same, one of the judges of the circuit was authorized to hold it
It is plain, therefore, that, according to a true construction of the act of 1863, reorganizing the courts of this district, the Supreme Court not only possesses no jurisdiction in criminal cases, except in an appellate form, but that there is established a separate and independent court, invested with all the criminal jurisdiction, to hear and punish crimes and offences within the district. And, hence, one of the grounds, if not the principal one, upon which the return places the right and power to disbar the relator, fails; for we do not understand the judges of the court below as contending that, if Judge Fisher, at the time of the conduct and words spoken by the relator before him, or in his presence, *372 was not holding the Supreme Court of the district, but was holding a court distinct from the Supreme Court, that they possessed any power or jurisdiction over the subject of this contempt as complained of, otherwise the case would present the anomalous proceeding of one court taking cognizance of an alleged contempt committed before and against another court, which possessed ample powers itself to take care of its own dignity and punish the offender. Under such circumstances, and in this posture of the case, it is plain that no authority or power existed in the Supreme Court to punish for the contempt thus committed, even without reference to the act of Congress of 1831,[*] which in express terms restricts the power, except for "misbehavior in the presence of said courts, or so near thereto as to obstruct the administration of justice."
Another ground relied on in the return for disbarring the relator is, that his conduct was not merely a contempt of the authority of the Supreme Court, but was, also, gross misbehavior in his office as an attorney generally, and that, for this reason also, his offence was cognizable by the court in general term, and punishable irrespective of the doctrine of contempts. The judges admit that the rule to show cause ordered against him at the general term, ignored the order made by Judge Fisher disbarring the relator, and called upon him to answer simply for the act and conduct specified as for a contempt; yet they insist that, after the return of the relator to the rule in answering the contempt, they had a right, in considering the answer, if any other offence appeared therein cognizable by the court, it was competent to take notice of it, and inflict punishment accordingly.
We cannot assent to this view. It assumes the broad proposition, that the attorney may be called upon to answer an offence specified, and, when the answer comes in, without any further notice or opportunity of defence or explanation, punish him for another and distinct offence. Certainly no argument can be necessary to refute such a proposition. *373 It violates the commonest and most familiar principles of criminal jurisprudence. It is true, where a contempt is committed in the presence of the court, no other notice is usually necessary; but a proceeding to punish an attorney generally for misbehavior in his office, or for any particular instance of misbehavior, stands on very different ground. The rule to show cause is in the record. After reciting the offensive language and conduct complained of (all of which occurred before Judge Fisher), it concludes in these words: "And said conduct and language requiring, in our opinion, investigation by this court, it is therefore ordered, that said Joseph H. Bradley show cause, on or before the fourth day of November next, why he should not be punished for contempt of this court by reason of said offensive conduct and language towards one of its members, and relating to the official acts of the said justice." It will be seen that the offence charged against the relator, and for which he was called upon to answer, was direct and specific, one well known to the law and the proceedings of courts,  a contempt of the Supreme Court. And the offence being thus specified, he was fully advised of the matters against which he was called upon to defend, and enabled to prepare his defence accordingly. That the relator so understood the charge is apparent from his answer, in which he expresses his satisfaction at the opportunity afforded him to present to the court his account of the facts involved in the case, and "to purge himself from any intentional disrespect, contumely, or contempt towards the court, or any member thereof, in the transactions referred to."
The order entered on the minutes of the court, after the answer to the rule to show cause, inflicting the punishment, confirms this view. It is found in the record, and is headed as follows:
"In the matter of Joseph H. Bradley, Sr.  Contempt of court."
"Mr. Bradley having filed his answer to the rule of court served on him, and having been heard at the bar in support of his answer, it is by the court ordered, that for the causes *374 set forth in said rule, the name of Mr. Bradley be stricken from the roll of attorneys, solicitors, &c., authorized to practice in this court."
The order, or judgment, seems to be in strict conformity to the offence charged in the rule to show cause, namely, for contempt of court.
We do not doubt the power of the court to punish attorneys as officers of the same, for misbehavior in the practice of the profession. This power has been recognized and enforced ever since the organization of courts, and the admission of attorneys to practice therein. If guilty of fraud against their clients, or of stirring up litigation by corrupt devices, or using the forms of law to further the ends of injustice; in fine, for the commission of any other act of official or personal dishonesty and oppression, they become subject to the summary jurisdiction of the court. Indeed, in every instance where an attorney is charged by affidavit with fraud or malpractice in his profession, contrary to the principles of justice and common honesty, the court, on motion, will order him to appear and answer, and deal with him according as the facts may appear in the case. But, this is a distinct head of proceeding from that of contempt of court, or of the members thereof, committed in open court, or in immediate view and presence, tending to interrupt its proceedings, or to impair the respect due to its authority. This distinction is recognized in the act of 1831, already referred to, which, after providing for personal contempt in presence of the court, authorizes attachments to issue, and summary punishment to be inflicted, for "the misbehavior of the officers of said courts in their official transactions."
Without pursuing this branch of the case further, our conclusion is 
First. That the judges of the court below exceeded their authority in punishing the relator for a contempt of that court on account of contemptuous conduct and language before the Criminal Court of the District, or in the presence of the judge of the same.
*375 Second. That they possessed no power to punish him, upon an ex parte proceeding, without notice or opportunity of defence or explanation for misbehavior, or for any particular instance of the same generally in his office as attorney of the court, as claimed in the words of the return, "irrespective of the doctrine of contempts."
The only remaining question is, whether or not a writ of mandamus from this court is the appropriate remedy for the wrong complained of. This question has already been answered by Chief Justice Marshall, who delivered the opinion of the court in Ex parte Crane.[*] That was an application for a mandamus to the Circuit Court of the United States for the Southern District of New York, commanding the court to review the settlement of several bills of exceptions. The learned Chief Justice observes: "A doubt has been suggested respecting the power of the court to issue the writ. The question was not discussed at the bar, but has been considered by the judges. It is proper," he observes, "that it should be settled, and the opinion of the court announced. We have determined that the power exists." He then refers to the definition and office of the writ as known to the common law in England, and to the language of Blackstone in speaking of it, as follows: "That it issues to the judges of any inferior court, commanding them to do justice, according to the powers of their office, whenever the same is delayed. For it is the peculiar business of the Court of King's Bench to superintend all other inferior tribunals, and therein to enforce the due exercise of those judicial or ministerial powers with which the crown or the legislature have invested them; and this, not only by restraining their excesses, but also by quickening their negligence, and obviating the denial of justice." The Chief Justice then refers to the 13th section of the judicial act, which enacts that the Supreme Court shall have power to issue writs of prohibition to the District Courts when proceeding *376 as courts of admiralty and maritime jurisdiction; and writs of mandamus, in cases warranted by the principles and usages of law, to any courts appointed or persons holding offices under the authority of the United States. "A mandamus to an officer," he observes, "is held to be the exercise of original jurisdiction; but a mandamus to an inferior court of the United States is in the nature of appellate jurisdiction."
Two of the judges dissented, and one of them, Mr. Justice Baldwin, delivered an elaborate opinion adverse to the decision, in which every objection to the jurisdiction is very forcibly stated. Since this decision the question has been regarded at rest, as will be seen from many cases in our reports, to some of which we have referred.[*]
This writ is applicable only in the supervision of the proceedings of inferior courts, in cases where there is a legal right, without any existing legal remedy. It is upon this ground that the remedy has been applied from an early day, indeed, since the organization of courts and the admission of attorneys to practice therein down to the present time, to correct the abuses of the inferior courts in summary proceedings against their officers, and especially against the attorneys and counsellors of the courts. The order disbarring them, or subjecting them to fine or imprisonment, is not reviewable by writ of error, it not being a judgment in the sense of the law for which this writ will lie. Without, therefore, the use of the writ of mandamus, however flagrant the wrong committed against these officers, they would be destitute of any redress. The attorney or counsellor, disbarred from caprice, prejudice, or passion, and thus suddenly deprived of the only means of an honorable support of himself and family, upon the contrary doctrine contended for, would be utterly remediless.
It is true that this remedy, even, when liberally expounded, affords a far less effectual security to the occupation of attorney *377 than is extended to that of every other class in the community. For we agree that this writ does not lie to control the judicial discretion of the judge or court; and hence, where the act complained of rested in the exercise of this discretion, the remedy fails.
But this discretion is not unlimited, for if it be exercised with manifest injustice, the Court of King's Bench will command its due exercise.[*] It must be a sound discretion, and according to law. As said by Chief Justice Taney, in Ex parte Secombe,[] "The power, however, is not an arbitrary and despotic one, to be exercised at the pleasure of the court, or from passion, prejudice, or personal hostility." And by Chief Justice Marshall, in Ex parte Burr:[] "The court is not inclined to interpose, unless it were in a case where the conduct of the Circuit or District Court was irregular, or was flagrantly improper."
We are not concerned, however, to examine in the present case how far this court would inquire into any irregularities or excesses of the court below in the exercise of its discretion in making the order against the relator, as our decision is not at all dependent upon that question. Whatever views may be entertained concerning it, they are wholly immaterial and unimportant here. The ground of our decision upon this branch of the case is, that the court below had no jurisdiction to disbar the relator for a contempt committed before another court. The contrary must be maintained before this order can be upheld and the writ of mandamus denied. No amount of judicial discretion of a court can supply a defect or want of jurisdiction in the case. The subject-matter is not before it; the proceeding is coram non judice and void. Now, this want of jurisdiction of the inferior court in a summary proceeding to remove an officer of the court, or disbar an attorney or counsellor, is one of the specific cases in which this writ is the appropriate remedy. We have already seen, from the definition and office of it, that it is issued to the inferior courts "to enforce the due exercise of those judicial *378 or ministerial powers with which the crown or legislature have invested them; and this, not only by restraining their excesses, but also by quickening their negligence and obviating their denial of justice."[*] The same principle is also found stated with more fulness in Bacon's Abridgment, title "Mandamus,"[] "to restrain them (inferior courts) within their bounds, and compel them to execute their jurisdiction, whether such jurisdiction arises by charter, &c., being in subsidium justici."[]
The same principle is also stated by Chief Justice Marshall in Ex parte Burr. "There is then," he observes, "no irregularity in the mode of proceeding which would justify the interposition of this court. It could only interpose on the ground that the Circuit Court had clearly exceeded its powers, or, had decided erroneously on the testimony." The case of Burr was malpractice and stirring up litigation, to the disturbance and oppression of the community. The jurisdiction was unquestionable. So in Ex parte Secombe, Chief Justice Taney, after showing that the question was one of judicial discretion, observes, "We are not aware of any case where a mandamus has issued to an inferior tribunal, commanding it to reverse or amend its decision, when the decision was in its nature a judicial act, and within the scope of its jurisdiction and discretion." The case of Secombe was for a contempt in open court, and the jurisdiction undoubted. So was the case of Tillinghast v. Conkling, referred to by the Chief Justice in his opinion. This writ has been issued in numerous cases by the King's Bench, in England, to inferior courts to restore attorneys wrongfully removed. The cases are collected by Mr. Tapping.[§] One of them was the case of an attorney suspended from practicing in the courts of the county palatine of Chester. The reason given for issuing this writ is, that the office is of *379 public concern, and regards the administration of justice; and because there is no other remedy.[*]
Cases are found also in many of the courts of the States. Among the more recent are three cases in California;[] in New York;[] in Pennsylvania, Virginia, and Alabama. In several of the cases the remedy failed, as in Ex parte Burr, Secombe, and Tillinghast, the court having held, in the cases, that the questions involved were of judicial discretion. But the proceeding is admitted to be the recognized remedy when the case is outside of the exercise of this discretion, and is one of irregularity, or against law, or of flagrant injustice, or without jurisdiction.
It will be seen that this opinion is wholly irrespective of the merits of this unhappy controversy between the relator and Judge Fisher, as the view we have taken of the case does not in any respect involve this question. We can only regret the controversy, as between gentlemen of the highest respectability and honor, and express the hope that reflection, forbearance, and the generous impulses that eminently belong to the members of their profession, may lead to their natural fruits,  reconciliation and mutual and fraternal regard.
Our conclusion is, that a peremptory writ of
MANDAMUS MUST ISSUE.
Mr. Justice MILLER, dissenting.
I am of opinion that this court has no jurisdiction of the case in which it has just ordered the writ of mandamus to issue.
There are in the reports of our decisions three applications before this for the writ of mandamus to be issued by this court to restore attorneys to places at the bar from which they had been expelled by Federal courts. The first of these is *380 the case of Burr.[*] The opinion delivered by Chief Justice Marshall expresses great doubt on the part of the court as to its right to interfere, and resting mainly on that doubt, and partly on the fact that the exclusion from practice was temporary, and would soon expire, the application was refused.
In the other two cases, namely, Tillinghast v. Conkling, and Ex parte Secombe, the application was denied, and the denial placed explicitly on the ground that this court has no power to revise the decisions of the inferior courts on this subject by writ of mandamus.[]
In delivering the opinion of the court in the latter case, Chief Justice Taney said, that "in the case of Tillinghast v. Conkling, which came before this court at the January Term, 1827, a similar motion was overruled. The case is not reported, but a brief written opinion remains in the files of the court, in which the court says that the motion is overruled upon the ground that it had not jurisdiction of the case." In the principal case the court said: "It is not necessary to inquire whether this decision of the Territorial court (disbarring Secombe) can be revised here in any other form of proceeding. The court are of opinion that he is not entitled to a remedy by mandamus ... It cannot be reviewed or reversed in this form of proceeding, however erroneous it may be, or supposed to be. And we are not aware of any case where a mandamus was issued to an inferior tribunal, commanding it to reverse or annul its decision, where the decision was in its nature judicial, and within the scope of its jurisdiction and discretion."
The attempt to distinguish the case now under consideration from those just cited, on the ground that in the present case the Supreme Court of the District of Columbia was acting without jurisdiction, is in my judgment equally without foundation in the fact asserted, and in the law of the case if the fact existed.
1. That court had jurisdiction of the person of Mr. Bradley, because he was a resident of the District of Columbia, and *381 because he received notice of the proceeding, and submitted himself to the court by depending on the merits.
2. It had jurisdiction of the offence charged, namely, a contempt of the court whose judgment we are reviewing. I say this advisedly, because the notice which called upon him to answer charged him in distinct terms with a contempt of the Supreme Court of the District, though much of the argument of counsel goes upon the hypothesis that the offence for which he was disbarred was an offence against the Criminal Court, and not the Supreme Court.
3. That court had undoubted authority to punish contempt by expelling the guilty party from its bar.
If the court had jurisdiction of the party and of the offence charged, and had a right to punish such offence by the judgment which was rendered in this case, what element of jurisdiction is wanting?
But if we concede that the Supreme Court of the District exceeded its authority in this case, I know of no act of Congress, nor any principle established by previous decisions of this court, which authorizes us to interfere by writ of mandamus. The argument in favor of such authority is derived from the analogy supposed to exist between the present case and others in which the court has held that the writ may be issued in aid of its appellate jurisdiction, as Ex parte Crane,[*] Ex parte Hoyt,[] and by the practice in the Court of King's. Bench, in England, and in some of our State courts.
In regard to the practice in the King's Bench and in the State courts, I shall attempt to show presently that this court possesses no such general supervisory power over inferior Federal courts as belongs to the King's Bench, and as belongs generally to the appellate tribunals of the States. The appellate power of this court is strictly limited to cases provided for by act of Congress.
The case of Crane[] was one which this court had an undoubted right to review. It was alleged that this right was obstructed by the refusal of the judge of the Circuit Court *382 to sign a bill of exceptions, and the court held that in such a case he might be compelled, by the writ of mandamus, to sign a truthful and proper bill of exceptions.
It was not necessary to cite this case and others, in which the court refused to grant the writ of mandamus, to show that under proper circumstances it may issue. In Ex parte Milwaukee Railroad Company[*] the court ordered a writ of mandamus to issue to the judges of the Circuit Court, because, in the language of the court, "the petitioner has presented a case calling for the exercise of the supervisory power of this court over the Circuit Court, which can only be made effectual by a writ of mandamus." And this is the true doctrine on which the use of the writ is founded; and the sound construction of the 13th section of the Judiciary Act.
The case of Hoyt,[] cited by counsel for petitioner, is in strong confirmation of this. Referring to the language of that section the court says, "The present application is not warranted by any such principles and usages of law. It is neither more nor less than an application for an order to reverse the solemn judgment of the district judge in a matter clearly within the jurisdiction of the court, and to substitute another judgment in its stead." Precisely what is asked in the present case.
The case of Tobias Watkins[] is very analogous to the one before us, and in construing the power of this court in regard to the writ of habeas corpus, decides principles which appear to me to be in direct conflict with the views advanced by the court in the opinion just read. In that case, Watkins had been indicted, tried, and sentenced to imprisonment by the Circuit Court of the District of Columbia. An application was made to this court for a writ of habeas corpus, on the ground that the indictment charged no offence of which that court had cognizance. But, conceding this to be true, and answering the case made by the petition, the court, by Marshall, C.J., asks: "With what propriety can this court look *383 into the indictment? We have no power," he says, "to examine the proceedings on a writ of error, and it would be strange if, under color of a writ to liberate an individual from unlawful imprisonment, we could substantially reverse a judgment, which the law has placed beyond our reach. An imprisonment under a judgment cannot be unlawful unless that judgment be an absolute nullity; and it cannot be a nullity if the court has general jurisdiction of the subject, although it be erroneous." "The law trusts that court with the whole subject, and has not confided to this court any power of revising its decisions. We cannot usurp that power by the instrumentality of the writ of habeas corpus." And, finally, after examining the cases in which this court had previously issued the writ of habeas corpus, he says that they are "no authority for inquiring into the judgments of a court of general criminal jurisdiction, and regarding them as nullities, if, in our opinion, the court has misconstrued the law, and has pronounced an offence to be punishable criminally, which we may think is not."
The case made by Mr. Bradley is much weaker than the case of Watkins, because, in the latter, the court was only asked to determine, on the face of the indictment, whether the offence charged was cognizable by the Circuit Court. Here the charge of a contempt, of which the court below had jurisdiction, is clear; but we are told that, on looking into the testimony, we shall find that the petitioner was not guilty of a contempt of that court, but of another court. Judge Marshall and the court over which he presided refused to look beyond the judgment, even at the indictment. Here the court looks beyond the judgment, and beyond the notice which charges the offence, and inquires into the evidence on which the party is convicted; and because that is, in the opinion of this court, insufficient, it is held that the court which tried the case had no jurisdiction. This is to me a new and dangerous test of jurisdiction.
But with all due respect to my brethren of the majority of the court, it seems to me that their judgment in this case is not only unsupported by the cases relied on, and in conflict *384 with the cases of Tillinghast and Secombe, decided by this court directly on the same point, but it is at war with the settled doctrine of the court on the general subject of its appellate jurisdiction.
The Constitution[*] declares that the appellate power of this court is subject to such exceptions, and is to be exercised under such regulations as Congress shall make.
Chief Justice Ellsworth, construing this clause of the Constitution, in the case of Wiscari v. Dauchy,[] said: "If Congress has provided no rule to regulate our proceedings, we cannot exercise an appellate jurisdiction; and if the rule is provided, we cannot depart from it." And the court afterwards, by Chief Justice Marshall, said in substance, that if Congress in establishing the Supreme Court, had not described its jurisdiction, its general power in reviewing the decisions of other Federal courts could not be denied. But the fact that Congress had described its jurisdiction by affirmative language, must be understood as a regulation under the Constitution, prohibiting the exercise of other powers than those described.[]
In United States v. Nourse,[§] a case of summary proceedings before the district judge under the revenue law, which provided that an appeal might be allowed to claimant by a judge of the Supreme Court, it was said that, "as this special mode is pointed out by which an appeal may be taken, it negatives the right of an appeal in any other manner;" and it was further said that the United States had no right of appeal, because none was given by the act which authorized the proceeding.
And finally, in the case of Barry v. Mercein,[] this court, by Chief Justice Taney, declared emphatically that, "by the Constitution of the United States the Supreme Court possesses no appellate power in any case unless conferred upon it by act of Congress; nor can it be exercised in any other *385 mode of proceeding than that which the law prescribes." This case and the case of United States v. Moore were decided in direct reference to the jurisdiction of this court over those of the District of Columbia; and in the latter, Judge Marshall uses this unmistakable language: "This court, therefore, will only review those judgments of the Circuit Court of Columbia, a power to re-examine which is expressly given by law."
Let us see, then, what regulations Congress has made in regard to our jurisdiction over the courts of the District of Columbia.
The Supreme Court of the District, whose judgment is attempted to be brought into review here, was established by the act of March 3, 1863. The only clause looking to a revision of the decisions of that court is section 11, which enacts "that any final judgment, order, or decree of said court may be re-examined and reversed or affirmed in the Supreme Court of the United States, upon writ of error or appeal, in the same cases and in like manner as is now provided by law in reference to final judgments, orders, and decrees of the Circuit Court of the United States for the District of Columbia." The act on which our jurisdiction over this Circuit Court depended is that of February 27, 1801. The 8th section of that act provides that "any final judgment, order, or decree of said Circuit Court, wherein the matter in dispute shall exceed the value of one hundred dollars" (now one thousand), "may be re-examined and reversed or affirmed in the Supreme Court of the United States by writ of error or appeal."
Here then is no provision for any other modes of review than by appeal and by writ of error; but there is a limitation of the use of these modes to cases in which the matter in dispute shall exceed one thousand dollars. Where then is there any authority for a review by writ of mandamus? And where is there any regulation authorizing a review of this case by any mode whatever?
For the counsel of petitioner in this case does not claim that the matter in dispute exceeds a thousand dollars, or has *386 any moneyed value. Such a claim would be fatal to the relief he asks, because it would show that it is a proper case for a writ of error, and therefore a mandamus will not lie.
We have repeatedly held that the writ of mandamus cannot be made to perform the functions of a writ of error.
In the recent case of the Commissioner v. Whiteley,[*] the following language was used without dissent: "The principles of the law relating to the remedy by mandamus are well settled. It lies when there is a refusal to perform a ministerial act involving no exercise of judgment or discretion... . . It lies when the exercise of judgment and discretion are involved, and the officer refuses to decide, provided that if he decided, the aggrieved party could have his decision reviewed by another tribunal. ... It is applicable only in these two classes of cases. It cannot be made to perform the functions of a writ of error."
And to the same purpose are Ex parte Hoyt[] and Ex parte Taylor.[]
Mr. Justice SWAYNE, not having heard the argument, took no part in the judgment.
NOTES
[*] § 1.
[*] 5 Peters, 190
[*] Ex parte Bradstreet, 7 Peters, 634; Insurance Company v. Wilson's Heirs, 8 Id. 291; Stafford v. Union Bank, 17 Howard, 275; United States v. Gomez, 3 Wallace, 753.
[*] Tapping on Mandamus, 13, 14.
[] 19 Howard, 13.
[] 9 Wheaton, 530
[*] 3 Blackstone's Com. 111.
[] Letter D., p. 273.
[] See also Bacon, letter E., p. 278; and Tapping on Mandamus, p. 105, and the cases there cited.
[§] On Mandamus, 44.
[*] White's case, 6 Modern, 18, per Holt; Leigh's case, 3 Id. 335; S. C Carthew, 169, 170.
[] People v. Turner, 1 California, 143, 188, 190.
[] People v. Justices, 1 Johnson's Cases, 181.
[*] 9 Wheaton, 529.
[] 19 Howard, 9.
[*] 5 Peters, 193.
[] 13 Id. 291.
[] 5 Id. 190.
[*] 5 Wallace, 825.
[] 13 Peters, 291.
[] 3 Ib. 193.
[*] Art. III, § 2.
[] 3 Dallas, 321.
[] United States v. More, 3 Cranch, 159; Durousseau v. United States, 6 Id. 307.
[§] 6 Peters, 470.
[] 5 Howard, 103.
[*] 4 Wallace, 524.
[] 13 Peters. 279.
[] 14 Howard, 3.