UNITED STATES of America, Petitioner

v.

Hon. Judge Almeric L. CHRISTIAN

No. 81–1323.

United States Court of Appeals,
Third Circuit.

Argued April 29, 1981.

Submitted June 11, 1981.

Decided Sept. 30, 1981.

Richard J. Favretto, Deputy Asst. Atty. Gen., Robert B. Nicholson (argued), Bruce E. Fein, Dept. of Justice, Washington, D. C., for petitioner.

Edward S. Szukelewicz (argued), Washington, D. C., for respondent.

Adriane J. Dudley (argued), Carol G. Hurst, Dudley, Dudley & Topper, Charlotte Amalie, St. Thomas, V. I., amicus curiae.

Before ADAMS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The petition for mandamus presently before the Court presents two issues: the scope of this Court's mandamus jurisdiction, and the power of the District Court of the Virgin Islands to summon an investigative grand jury.

### I.

On April 28, 1980, the Assistant Attorney General of the United States requested the District Court of the Virgin Islands to convene a grand jury to investigate possible violations of the federal antitrust laws in the importing, wholesaling, and retailing of liquor in the Virgin Islands. The United States urged that the court's authority to convene the grand jury derived either from Rule 6(a) of the Federal Rules of Criminal

Procedure or from 18 U.S.C. § 3331(a). The district court, reasoning that it lacked the requisite authority, entered an order on December 12, 1980, denying the request. The government subsequently filed this petition for mandamus, asking that we direct the district court to summon a grand jury to investigate alleged violations of the federal antitrust laws. At the time of filing the mandamus petition, the government indicated that it intended to rely on 18 U.S.C. § 3331 as well as Rule 6(a) to support its position. *See* Petition for Writ at 2. The respondent continued to challenge 18 U.S.C. § 3331 as a source of authority for convening a grand jury. However, in a subsequent answering brief the United States stated that it sought review only of the refusal to summon a grand jury under Rule 6(a). *See* Answering Brief at 2 n.1.

### II.

At the outset, we confront a potential barrier to our adjudication of this dispute. Because the government seeks a writ of mandamus, we initially must consider whether the prerequisites to entertaining the petition are satisfied.

Traditionally, federal appellate courts have issued the writ of mandamus where a lower court has made an error of "jurisdictional" dimension. Thus, the Supreme Court in *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943), identified mandamus as the means "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so."[1] Jurisdiction in this sense, however, has been read broadly.[2] In a variety of contexts, appellate courts have resorted to mandamus where the district court, in a case properly before it, took some action it was not empowered

---

1. *Accord, Parr v. United States*, 351 U.S. 513, 520–21, 76 S.Ct. 912, 917–18, 100 L.Ed. 1377 (1956); *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953).

2. *See Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976) ("we have not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of 'jurisdiction' ").

to take[3] or declined to take some action required of it.[4]

The present controversy, on superficial consideration, appears to present the paradigmatic case for mandamus review. The government contends that the district court, in declining to convene a grand jury, has failed to exercise an authority it was obliged to consider. The writ of mandamus, it is argued, provides the appropriate vehicle by which to remedy this failure to comply with applicable law. The unusual posture of the case, however, engenders special problems respecting the availability of mandamus relief. The principle of *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)—that the Supreme Court has no *original* jurisdiction to issue the writ of mandamus—historically has applied as well to lower federal courts. Although there appears to be no constitutional impediment, the First Judiciary Act confined the lower courts to issuing writs in aid of an otherwise existing jurisdiction. *See McIntire v. Wood*, 11 U.S. (7 Cranch) 504, 3 L.Ed. 420 (1813).[5] The current authorization for mandamus, embodied in the All Writs Act, 28 U.S.C. § 1651(a), preserves this restraint. It provides: "The Supreme Court and all

courts established by Act of Congress may issue all writs necessary or appropriate *in aid of their respective jurisdictions* and agreeable to the usages and principles of law."

■ To satisfy the jurisdictional prerequisite, it is not necessary that a case be pending in the court asked to issue the writ. *See, e. g., United States v. Mellon Bank, N. A.*, 545 F.2d 869, 872 (3d Cir. 1976). Rather, it suffices that the case may at some future time come within the court's appellate jurisdiction. As we explained in *United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir. 1979), "the action must . . . involve subject matter to which our appellate jurisdiction could in some manner, at sometime, attach."[6] Before entertaining the application, then, we must identify a jurisdiction that the issuance of the writ might assist.

Because the district court has so far declined to convene a grand jury, there is currently pending no lawsuit that might eventually come before us on appeal. Indeed, one of the government's arguments for issuance of the writ is that, absent mandamus, the district court's decision will forever be shielded from review. It is, of

3. *See DeBeers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945) (enjoining, absent statutory authority, garnishment actions).

4. *See Ex parte United States*, 287 U.S. 241, 53 S.Ct. 129, 77 L.Ed. 283 (1932) (issuance of bench warrant).

5. Because the Constitution specifies that the Supreme Court shall have original jurisdiction in cases "affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party," Chief Justice Marshall concluded that with respect to all other cases— including the mandamus question raised in *Marbury*—the Court's jurisdiction must be appellate. Yet the lower courts are not similarly bound by this constitutional language. Although *McIntire v. Wood*, 11 U.S. (7 Cranch) 504, 3 L.Ed. 420 (1813), paralleled *Marbury*, and construed the all writs section of the First Judiciary Act, with respect to the jurisdiction of circuit courts, as limited to writs issued in aid of a jurisdiction otherwise existing, this was based on statutory interpretation. *See* 11 U.S. (7 Cranch) at 504. In fact, the absence of constitutional grounds made possible the congressional abrogation of *McIntire* in the 1962

Mandamus & Venue Act. That statute, 28 U.S.C. § 1361, vests federal district courts with original jurisdiction over actions in the nature of mandamus to compel a federal officer to perform his duty.

6. In *RMI*, a corporation petitioned the court of appeals for a writ of mandamus directing the district judge to consider the merits of the petitioner's motion for a protective order respecting certain documents. The corporation had earlier submitted the documents to a grand jury pursuant to a subpoena; after the grand jury indicted several parties, the government proposed to disclose to defendants all documents produced before the grand jury, prompting the corporation to move for a protective order limiting disclosure of documents it had supplied. On these facts, we held that the petition fell without our potential jurisdiction. The corporation had effectively intervened in the criminal proceedings, and, had the district court reached the merits of its motion, would have been entitled to immediate appellate review from an adverse ruling. *See United States v. RMI Co.*, 599 F.2d at 1186–87.

course, possible that some action not yet commenced may raise the issue the government would have us consider now.[7] But prediction of future lawsuits is nothing more than speculation, and, in any event, the connection between such suits and the present petition is so attenuated that it cannot establish that issuance of the writ at this time would be "in aid of" our jurisdiction.

Although the requested writ cannot be issued pursuant to our eventual jurisdiction over any identifiable case, we are not persuaded that such jurisdiction is invariably a prerequisite to a grant of mandamus relief. This Court has previously made use of the writ of mandamus notwithstanding the lack of a specific controversy over which we might later exercise jurisdiction. In *United States v. Malmin*, 272 F. 785 (3d Cir. 1921), the Governor of the Virgin Islands, without authority, had revoked the appointment of district judge Malmin and replaced him with another judge. Because questions of the validity of the judgments of the functioning judge would arise "in a way which would leave this court helpless to correct the fundamental trouble" and insofar as it was "essential to the appellate jurisdiction of this court that orderly proceedings in the district court … be restored," the Court issued a writ ordering Malmin to reassume his duties as judge. *Id.* at 792. Indeed, cases in which, absent resort to mandamus, we would lose our ability to review the issue at all, present a wholly consistent example of mandamus as necessary for the exercise of our jurisdiction. As described by adherents of a carefully circumscribed mandamus power: "The focal question posed for a Court of Appeals by a petition for the issuance of a writ is whether the

action of the District Court tends to frustrate or impede the ultimate exercise by the Court of Appeals of its appellate jurisdiction granted in some other provision of the law." *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 264, 77 S.Ct. 309, 317, 1 L.Ed.2d 290 (1957) (Brennan, J., dissenting).[8] Here, the refusal of the district court to convene a grand jury to investigate antitrust violations may arguably impede the prosecution of crimes over which we would otherwise have review.

On at least three occasions, the Supreme Court, acting pursuant to Section 1651 or its predecessors, has granted the writ even though no controversy which subsequently could have been presented to the Court for review on the merits was then pending. In *Ex parte Bradstreet*, 32 U.S. (7 Pet.) 634, 8 L.Ed. 810 (1833), the district court had dismissed an action in which plaintiff had demanded the return of property, on the ground that the plaintiff had not averred the pecuniary value of the land, and therefore failed to satisfy the $2,000 amount-in-controversy requirement. Because the action had already been dismissed, and there was accordingly no pending federal action, plaintiff's petition to the Supreme Court for a writ of mandamus did not fall within the tribunal's "potential" jurisdiction over a specific controversy. Nonetheless the Court, in a brief opinion by Chief Justice Marshall, issued the writ, directing the district court to reinstate the case. *Id.* at 649, 8 L.Ed. 810.

*Ex parte United States*, 287 U.S. 241, 53 S.Ct. 129, 77 L.Ed. 283 (1932), similarly involved a situation where, at the time the Supreme Court considered the request for mandamus, there was no pending action over which the Court's jurisdiction might

---

7. If, for example, the district court alters its view of its authority and convenes a grand jury, a party subsequently prosecuted as a result of the action taken by such grand jury might challenge its power to do so.

8. *See also Chandler v. Judicial Council*, 398 U.S. 74, 111–117, 90 S.Ct. 1648, 1667–1670, 26 L.Ed.2d 100 (1970) (Harlan, J., concurring). In *Chandler*, Justice Harlan concluded that the Court's jurisdiction to issue a writ under § 1651

was properly invoked because the Judicial Council's orders, allocating Judge Chandler's cases to the other judges in his district, touched hundreds of cases over which the Supreme Court eventually had appellate or review jurisdiction, although the Court would never know which cases would have been assigned to Judge Chandler. The Council's action thus constituted a usurpation of power that could not adequately be remedied on final review.

some day attach. In that case a United States Attorney, having secured a grand jury indictment against Joseph Wingert, petitioned the district court to issue a bench warrant for Wingert's arrest. When the court refused, the government, by-passing the court of appeals, petitioned the Supreme Court for a writ of mandamus directing the district judge to issue the warrant. In granting the writ, the only jurisdictional question that detained the court was whether it could issue the writ notwithstanding the fact that direct review from district court decisions is vested in the courts of appeals, rather than the Supreme Court. The Court was not troubled by the absence of a pending lawsuit; indeed, the premise of the Court's discussion was that the court of appeals had authority to issue the writ, *see id.* at 249, 53 S.Ct. at 131, even though, as the district court's opinion indicates, *see* 55 F.2d 960, 963 (E.D.Pa.1932), mandamus supplied the only basis for appellate review.

More recently, in *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), the Supreme Court considered the appropriateness of using mandamus to require a district court to entertain a diversity action it had improperly remanded to state court. The Court, without mention of whether the writ would aid appellate jurisdiction when there was no longer a live federal case, granted the requested relief. Mandamus, it said, would help "prevent nullification of the removal statutes by remand orders resting on grounds having no warrant in the law." *Id.* at 353, 96 S.Ct. at 594.

■ *Ex parte Bradstreet, Ex parte United States,* and *Thermatron Products* jointly suggest that a controversy may fall within the "potential jurisdiction" of an appellate tribunal for purposes of Section 1651, even absent a pending federal action that might ultimately be appealed. *Ex parte United States,* moreover, indicates that the jurisdictional prerequisite may be satisfied even though no such action was ever pending in federal court. These three cases should not be read too generously, however, and we do not interpret them to sanction a broad supervisory authority over the lower courts. Instead, we regard the precedents as establishing a principle of limited application: where a district court, by action not committed to its discretion, prevents a nascent controversy from being adjudicated and thereby defeats appellate review, the subject matter of the court's action is within the "jurisdiction" of the appellate court for purposes of the All Writs Act.

■ Applied to the present case, these principles support our power to entertain the government's petition. The government alleges that the district court, in declining even to consider whether to summon a grand jury, has breached a duty that is not committed to its discretion. Further, the purported consequence of this decision is that the United States will be precluded from adequate investigation and prosecution of criminal activity, thereby barring the emergence of controversies cognizable in federal court. Although the district court's action will not interfere with our review of any case currently pending in the federal system, we believe that the present dispute affects our "jurisdiction" as that term is used in Section 1651.

Various of the Supreme Court's recent illuminations of the scope and purpose of the mandamus remedy strengthen this conclusion. In *LaBuy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), the Court employed the writ to compel a district court to vacate orders referring an antitrust case for trial before a master. The Court in so doing suggested that mandamus might be used "as a means of policing compliance with the procedural rules," *see Will v. United States,* 389 U.S. 90, 100 n.10, 88 S.Ct. 269, 276, n.10, 19 L.Ed.2d 305 (1967), by using it to review orders that are part of a general practice adopted by the district court which is outside the scope of the rules. While review of individual discretionary decisions is improper, appellate tribunals should consider charges that a lower court's approach to a rule effectively "nullifies" it. *See* 352 U.S. at 256–57, 77 S.Ct. at 313–14. The present

case involves such a systemic problem. The district judge simply does not believe he possesses the power to summon a grand jury, while the government adopts a contrary construction of the rules and statutes. The issue of discretionary authority is not presented, for the parties agree that the district court's power was either granted or forbidden. The case at hand thus presents an opportunity for mandamus review to fulfill its "vital corrective and didactic function." *Will*, 389 U.S. at 107, 88 S.Ct. at 279.

The Supreme Court stressed the pedagogic value of the writ in *Schlagenhauf v. Holder*, 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964). There it approved mandamus review to decide the "basic, undecided" question whether a district court could order the mental or physical examination of a defendant pursuant to Rule 35(a) of the Federal Rules of Civil Procedure. Similarly, the question presented here is one of first impression, and review would comport with the instructional goals of mandamus. Consideration of the petition also serves the policy of limiting the writ to extraordinary circumstances by insisting "that the party seeking issuance of the writ have no other adequate means to attain the relief he desires." *Kerr v. United States District Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976); *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 701 (3d Cir. 1979). As explained above, the district court, should it persist in its interpretation of the law, will foreclose the opportunity for testing its construction on direct appeal. Review through a petition for mandamus thus appears to be the only practical way to resolve this unsettled and important question.

We note finally that the policies that typically militate against consideration of a petition for mandamus are inapposite here. The case does not implicate the general policy against piecemeal appeals, *see First Jersey*, 605 F.2d at 702, inasmuch as there is as yet no ongoing action that review would disrupt. Moreover, although the cases arise in the context of the federal criminal statutes and procedural rules, review will not endanger the right of an individual criminal

defendant to a speedy trial. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (Sixth Amendment's speedy trial guarantee applies to period between indictment and trial); *Will v. United States*, 389 U.S. at 96, 88 S.Ct. at 274.

In view of such considerations, we proceed to consider the merits of the petition.

### III.

The grand jury as an institution was adopted from the common law and, secured in the Fifth Amendment, became a fundamental part of our country's system for the prosecution of crime. *See Ex parte Bain*, 121 U.S. 1, 6, 7 S.Ct. 781, 784, 30 L.Ed. 849 (1887); *United States v. Calandra*, 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974). While neither the Constitution nor statutory law originally defined the scope of grand jury functions, it was established early on by the judiciary that the authority to summon grand juries was a corollary of the criminal jurisdiction of the federal courts. As Chief Justice Marshall explained:

> It has been justly observed, that no act of Congress directs grand juries, or defines their powers. By what authority, then, are they summoned, and whence do they derive their powers? The answer is, that the laws of the United States have erected courts which are invested with criminal jurisdiction. This jurisdiction they are bound to exercise, and it can only be exercised through the instrumentality of grand juries. They are, therefore, given by a necessary and indispensable implication. But, how far is this implication necessary and indispensable? The answer is obvious. Its necessity is co-extensive with that jurisdiction to which it is essential.

*United States v. Hill*, 1 Brock 156, 159, 26 Fed.Cas. 315, 317 (C.C.D.Va.1809). Because the Fifth Amendment guarantees that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury," federal courts possess inherent power

to convene grand juries when they are necessary to satisfy the constitutional mandate.

Absent such a necessary implication from the Constitution, however, there is some question whether courts have inherent power to convene grand juries. In discussing the authority of a territorial court, the elder Justice Harlan remarked:

> A grand jury, by which presentments or indictments may be made for offences against the United States, is a creature of statute. It cannot be empanelled by a court of the United States by virtue simply of its organization as a judicial tribunal.

*In Re Mills*, 135 U.S. 263, 267, 10 S.Ct. 762, 763, 34 L.Ed. 107 (1890). And more recently, the Second Circuit, in *United States v. Fein*, 504 F.2d 1170, 1172 (2d Cir. 1974), declared that grand juries are not "creatures of the court"; rather, the power of courts over grand juries is guided by rules and statutes.[9] The *Fein* court sought to reconcile the language in *Hill* and *Mills* by noting that Chief Justice Marshall's opinion was written in 1809, "long before Congress had enacted any legislation regulating the powers or the tenure of grand juries." 504 F.2d at 1172. In *Mills* the issue was the power of an Article I territorial court, whereas in *Hill* the discussion centered on Article III courts.

In canvassing the possible sources that might confer power on the District Court of the Virgin Islands to summon a grand jury, we are limited. It would appear that power cannot derive simply from the court's inherent supervisory authority over activities within its purview. Nor is it clearly implied by necessity from the Fifth Amendment's command, for it was settled at the time our nation began acquiring territories that, at least with respect to prosecutions under local law, specific protections and rights conferred by the Constitution do not apply "to territory belonging to the United States which has not been incorporated into the Union." *Balzac v. Porto Rico*, 258 U.S. 298, 305, 42 S.Ct. 343, 345, 66 L.Ed. 627 (1922); *Dorr v. United States*, 195 U.S. 138, 145, 24 S.Ct. 808, 811, 49 L.Ed. 128 (1904). Therefore, this Court, following the directions provided in *Balzac v. Porto Rico*, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627 (1922); *Dorr v. United States*, 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128 (1904) and *Hawaii v. Mankichi*, 190 U.S. 197, 23 S.Ct. 787, 47 L.Ed. 1016 (1903), has held that the Fifth Amendment's grand jury protection does not extend to prosecutions initiated in the Virgin Islands.

In all the cases holding that constitutional protections relating to the conduct of criminal prosecutions do not apply in the absence of statute to unincorporated territories, the Supreme Court reasoned that the United States, in acquiring such possessions, did not intend to supplant indigenous procedural rules which had developed to enforce local substantive norms.[10] It might be ar-

---

9. In *Fein* the court decided that the district court did not have inherent power to extend the grand jury term beyond the statutorily prescribed 18-month period. Consequently, an indictment returned nine days after the expiration of the original 18-month life of the grand jury was held invalid. *See United States v. Fein*, 504 F.2d 1170, 1180 (2d Cir. 1974).

10. As the Supreme Court recently explained in *Torres v. Puerto Rico*, 442 U.S. 465, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979), two pragmatic justifications underlay the initial decision not to extend the Constitution to the unincorporated territories. First, imposition of certain of the constitutional provisions on people unaccustomed to common law traditions "may be to work injustice and provoke disturbance rather than to aid the orderly administration of justice." *See Dorr v. United States*, 195 U.S. 138,

145–46, 24 S.Ct. 808, 811–12, 49 L.Ed. 128 (1904). Second, the application of the Constitution to the territories might create such severe practical difficulties as to prohibit the United States from exercising its constitutional power to occupy and acquire new lands. *Id.* at 148, 24 S.Ct. at 812; *Downes v. Bidwell*, 182 U.S. 244, 305–311, 21 S.Ct. 770, 794–796, 45 L.Ed. 1088 (concurring opinion). *See Torres v. Puerto Rico*, 442 U.S., at 469, 99 S.Ct. at 2428. Notably, permitting the Virgin Islands District Court to convene a grand jury to investigate crimes would neither disrupt local law enforcement nor compromise national interests. Further, as the Supreme Court noted in *Torres*, "Congress has generally left to this Court the question of what constitutional guarantees apply to *Puerto Rico*." *Id.* at 470, 99 S.Ct. at 2429, *citing Examining Board v. Flores de Ote-*

gued that the existence of a territorial tradition unlike our own should not defeat application of constitutional guarantees when the United States, rather than the territorial government, seeks to investigate and prosecute violations of federal, rather than local, law. However, in light of this Court's decision in *Government of Virgin Islands v. Dowling*, 633 F.2d 660 (3d Cir. 1980), which held that the Fifth Amendment requirement of a grand jury does not apply in the Virgin Islands even for a prosecution under federal law, we find no constitutional basis for investigatory grand juries in the territory.

Even if the Constitution does not apply,[11] however, the Virgin Islands, as an unincorporated territory, 48 U.S.C. § 1541(a), is governed by a congressionally enacted Bill of Rights. 48 U.S.C. § 1561. We have previously held that such Bill of Rights "expresses the congressional intention to make the federal constitution applicable to the Virgin Islands to the fullest extent possible consistent with its status as a territory." *In Re Brown*, 439 F.2d 47, 51 (3d Cir. 1971) (en banc). The Virgin Islands Bill of Rights extends the Fifth Amendment to that territory, but also states "[t]hat all offenses shall continue to be prosecuted in the district court by information as heretofore, except such as may be required by local law to be prosecuted by indictment by grand jury." 48 U.S.C. § 1561. Therefore neither constitutional nor organic statutory provisions can readily be construed to authorize, even by implication, the Virgin Islands District Court to convene a grand jury. *See Government of Virgin Islands v. Rijos*, 285 F.Supp. 126, 129 (D.V.I.1968).

Nevertheless, since Chief Justice Marshall's time Congress has enacted several statutes explicitly providing for grand juries. In the present proceeding the government originally suggested two sources for the judicial power to summon a grand jury: Rule 6(a) of the Federal Rules of Criminal Procedure, and 18 U.S.C. § 3331(a), which permits the creation of special grand juries "because of criminal activity in the district." Judge Christian, however, expressed the concern that the Virgin Islands District Court's authority in the criminal field is not congruent with that of other federal trial courts. In his view, the Virgin Islands tribunal does not share the power to summon a grand jury for indictment or investigative purposes. The government, after certifying to the district court in accordance with Section 3331 the need for a special grand jury, has sought mandamus only with respect to the district court's refusal to convene a jury pursuant to Fed.R.Crim.P. 6(a).[12] In view of this decision by the government, we turn to Rule 6(a).

IV.

As authorized by Congress, the District Court of the Virgin Islands possesses a hybrid jurisdiction that combines the powers of a federal court with those ordinarily reserved for state tribunals. The court possesses both "the jurisdiction of a district court of the United States" over cases arising under the federal constitution and laws, and "general original jurisdiction" in all other causes. 48 U.S.C. § 1612. The Federal Rules of Criminal Procedure govern in the District Court of the Virgin Islands pursuant to Rule 54(a). Those Rules have the force of statute,[13] and thus might, as

---

ro, 426 U.S. 572, 590, 96 S.Ct. 2264, 2275, 49 L.Ed.2d 65 (1976).

**11.** *Cf. Rassmussen v. United States*, 197 U.S. 516, 526, 25 S.Ct. 514, 517, 49 L.Ed. 862 (1905) (acts of Congress purporting to extend the Constitution to incorporated territories are "declaratory merely of a result which existed independently by the inherent operation of the Constitution.")

**12.** Because the government has withdrawn its challenge to the district court's refusal to exer-

cise authority under § 3331(a), we do not address the question of that statute's applicability.

**13.** In *United States v. Fein*, 504 F.2d 1170 (2d Cir. 1974), the Second Circuit indicated that Rule 6(a) is not merely a court-adopted rule channelling pre-existing grand jury authority; it actually creates and defines the court's power with respect to grand juries. Under 18 U.S.C. § 3771 Congress empowered the Supreme Court to prescribe rules of criminal procedure and reserved to itself a ninety day peri-

the government maintains, provide an appropriate source of authority for the District Court to convene a grand jury.

Rule 6(a) reads:

Summoning Grand Juries. The court shall order one or more grand juries to be summoned at such times as the public interest requires. The grand jury shall consist of not less than 16 nor more than 23 members. The court shall direct that a sufficient number of legally qualified persons be summoned to meet this requirement.

If this Rule applied with full force in the Virgin Islands, it arguably would confer on the district court the authority to convene a grand jury to investigate crimes and indict where it found probable cause. *See, e. g., United States v. Wallace & Tiernan, Inc.,* 349 F.2d 222, 226 (D.C.Cir.1975). The investigatory powers of such a grand jury would be broad, since the federal system allows grand juries wide compass in their inquiries. *See, e. g., United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). In the Virgin Islands, however, the authority provided by Rule 6(a) is circumscribed. Rule 54(a), which extends the application of the Rules to the Virgin Islands, carves out a significant exception: "all offenses shall continue to be prosecuted in ... the District Court of the Virgin Islands by information as heretofore except such as may be required by local law to be prosecuted by indictment by grand jury." This exception reflects and incorporates the substance of Section 25 of the Revised Organic Act of the Virgin Islands, 48 U.S.C. § 1615, which provides for prosecution by information rather than indictment unless otherwise required by local law. In light of Rule 54(a) and Section 25, Rule 6(a) cannot be read to authorize *indicting* grand juries in the Virgin Islands. The government suggests that Rule 6(a) can nevertheless provide authority for grand juries in the

Virgin Islands that *investigate* but do not indict. Although 54(a) does not specifically forbid such grand juries, we find nothing in Rule 6(a) which can fairly be construed to authorize them.

Many states that prosecute by information still provide for investigatory grand juries, especially when large and intricate conspiracies or public corruption are at stake. For example, Pennsylvania, which previously authorized such juries under common law, *see* Note, *Discretionary Power in the Judiciary to Organize a Special Investigating Grand Jury,* 111 U.Pa.L.Rev. 954 (1963), has recently spelled out by legislation the powers it considers appropriate for its "investigating grand juries." 42 Pa. Cons.Stat.Ann. §§ 4541–4553 (Purdon 1981). That law empowers investigatory grand juries to subpoena witnesses and inquire into criminal offenses within the Commonwealth, initiate civil and criminal contempt proceedings, and issue presentments against any person within its jurisdiction who appears to have committed an offense against the Commonwealth. 42 Pa.Cons.Stat.Ann. § 4548. We presume that the government in this case seeks to have the District Court of the Virgin Islands authorize a similar type of institution—in effect, a body with all the powers of a normal grand jury short of the power to indict. However, we are unable to find in the Federal Rules any language that would create such an entity in the way that Pennsylvania's common law and statutory provisions do.

The federal courts have long recognized the vital investigatory function which grand juries perform in the federal system. *See, e. g., Branzburg v. Hayes,* 408 U.S. 665, 701, 92 S.Ct. 2646, 2666, 33 L.Ed.2d 626 (1972); *Blair v. United States,* 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919); *Hale v. Henkel,* 201 U.S. 43, 65, 26 S.Ct. 370, 375, 50 L.Ed. 652 (1906). Indeed, some commentators have suggested that the grand

od for reviewing such rules before they took effect. The Supreme Court has declared that Congress can be deemed to have adopted these Rules, *see Davis v. United States,* 411 U.S. 233, 241–42, 93 S.Ct. 1577, 1582–83, 36 L.Ed.2d 216 (1973); *Singer v. United States,* 380 U.S. 24, 85

S.Ct. 783, 13 L.Ed.2d 630 (1964); and courts have specifically stated that the federal rules have the force and effect of statutes, *see Bacon v. United States,* 449 F.2d 933, 937 n.3 (9th Cir. 1971); *United States v. Wallace & Tiernan, Inc.,* 349 F.2d 222 (D.C.Cir.1965).

jury's role as investigator is at least as important a contribution to our legal system as is its role as protector of individual rights. *See* Note, *Investigating Grand Juries: A Comparison of Pennsylvania's Judicially and Legislatively Created Bodies,* 18 Duq.L.Rev. 933, 933 (1980). But no authority advocates investigation for its own sake; the grand jury's inquisition must culminate in a disposition that furthers the prosecutorial process. Although it may ultimately fail to uncover any crime, a federal grand jury's investigation can still be justified by the possibility that it *might* have resulted in the issuance of criminal charges. As the Supreme Court explained in *Blair,* in describing the grand jury's powers:

> It is a grand inquest, a body with powers of investigation, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of a crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning.

250 U.S. at 282, 39 S.Ct. at 471; *accord, Branzburg, supra,* 408 U.S. at 688, 92 S.Ct. at 2660. *See generally United States v. Cox,* 342 F.2d 167, 185–96 (5th cir. 1975) (en banc) (Wisdom, J., concurring specially). By its own terms this recognition of investigatory powers cannot be read to extend to situations in which the grand jury lacks the *power* to make formal accusations. Rather, it ties the grand jury's broad investigative power to its ultimate decision whether to accuse a suspect of a crime.

For the Virgin Islands, the Federal Rules withhold any means by which grand juries might make formal accusations. As noted above, Rule 54(a) specifically denies authorization for indictment except as required

by the local legislature. Further, it appears, the Rules do not empower grand juries in the Virgin Islands or elsewhere to make "presentments"—reports of the grand jury to the court asking that a "charge be drawn to cover the facts should they constitute a crime," *United States v. Smyth,* 104 F.Supp. 283, 295 (N.D.Cal.1952). As the Court of Appeals for the Fifth Circuit has noted, "the practice of using presentments has disappeared in the federal system and is not provided for in F.R.Crim.P. Rules 6 and 7." *United States v. Briggs,* 514 F.2d 794, 803 n.14 (5th Cir. 1975). This reading of the Rules is strengthened by the Notes of the Advisory Committee to Rule 7, which provide that:

> Presentment is not included as an additional type of formal accusation, since presentments as a method of instituting prosecutions are obsolete, at least as concerns the Federal courts.

It is conceivable, of course, that Congress would wish to preserve accusation by presentment where it is not obsolete, and the Virgin Islands might be considered such a place because indictment is not available. Though such a policy might be considered advisable, nothing in the language of Rules 6 and 7 lends any support to the proposition that any federal grand juries are authorized to make presentments.

Indeed, in light of Rule 54(a) and the parallel Section 25 of the Virgin Islands Organic Act it would be difficult to find authority for a grand jury to make presentments in the Virgin Islands even if federal grand juries elsewhere had such power. The legislative history of the 1954 amendments to Section 25 suggests two concerns: a reluctance to provide for a right to grand jury indictment—a right that might lead to a general jail delivery of the territory's prisoners—and a desire to avoid creating a prosecuting body that would conflict with the Islands' civil law heritage.[14] In light of

---

14. The retention of prosecution by information in Section 25 did not appear in the versions of the Revised Organic Act that were reported out of committee in the Senate and House of Representatives. Both branches of Congress added

the provisions by floor amendment at the request of Judge Albert Maris, a principal architect of the Act. *See* Conf.Rep.No.2105, 83d Cong., 2d Sess. 21 (1954), U.S.Code Cong. & Admin.Code 1954, p. 2585. The debates ex-

the second concern it is difficult to conceive of a rationale that would motivate Congress to permit grand jury presentment but withhold authorization for indicting grand juries. If the latter would violate local traditions and customs, the former, differing only in that the grand jury would not formally institute proceedings but would recommend to the court that proceedings be instituted, would appear equally obtrusive. Presentment is no more familiar to Virgin Islands' tradition than is indictment. In the absence of a clear expression permitting presentments in the Virgin Islands, we are unable to infer such an intent from either the Federal Rules or Section 25 of the Revised Organic Act.

If the government's proposed investigatory grand jury may neither indict nor present, it can serve no effective accusatorial purpose. The only remaining possible function would be the issuance of reports of some sort. In a variety of circumstances federal grand juries have been permitted to issue reports in addition to or even in place of indictments. The only explicit statutory authority for such reports is contained in the provisions for special grand juries under 18 U.S.C. §§ 3331–3334.[15] Although federal grand juries not convened pursuant to that statute may also have some reporting powers, *see In re Report and Recommendations of June 5, 1972 Grand Jury Concerning Transmission of Evidence to the House of Representatives,* 370 F.Supp. 1219, 1223–24 (D.D.C.1974),[16] the government has cited no case in which a federal grand jury was convened with the *sole* power and purpose of issuing such reports.[17] Such an institu-

---

plain that the amendment was designed "to make sure that there will be no general jail delivery of any individuals in the Islands" whose prosecution had been instituted by information, a concern that arose "as a result of several cases which [had] gone to the appellate courts of the United States from the Territory of Guam." 100 Cong.Rec.8673 (1956) (remarks of Rep. Saylor). Earlier, the Ninth Circuit, observing that the Guam Organic Act made the Federal Rules of Criminal Procedure applicable in the District Court of Guam, had held that criminal defendants had a right, under Rule 7(a), to prosecution by indictment for any offense punishable by a prison term exceeding one year. *See Hatchett v. Government of Guam,* 212 F.2d 767, 772 (9th Cir.), *cert. dismissed* 348 U.S. 801, 75 S.Ct. 17, 99 L.Ed. 633 (1954). Inasmuch as prosecutions in Guam were initiated by information, this holding created the danger that all prisoners on Guam, none of whom had been prosecuted by indictment, might be released. Congress responded by amending the Guam Organic Act to insure against a "general jail delivery," *see* S.Rep.No. 2006, 83d Cong., 2d Sess. 2 (1954), U.S.Code Cong. & Admin.News 1954, p. 3371, and to foreclose future application of federal procedural rules "*which authorize or require . . .* the prosecution of offenses by indictment by a grand jury instead of by information." 48 U.S.C. § 1424(b).

Like Guam, the Virgin Islands, a possession of Denmark until 1917, claim a civil law heritage that does not disclose reliance on grand juries. The proposal of Judge Maris apparently respected the local interest in retaining its traditional procedures as well as the immediate concern of preventing a general release of prisoners. Although the latter goal could have been satisfied by a rule authorizing but not requiring grand juries, Section 25 and Rule 54(a) went further and withheld future *authorization* for indictment by grand jury.

**15.** 18 U.S.C. § 3333 provides for the issuance of reports "concerning noncriminal misconduct, malfeasance, or misfeasance in office involving organized criminal activity by an appointed public officer or employee as the basis for a recommendation of removal or disciplinary action" or "regarding organized crime conditions in the district."

**16.** The existence of the power to issue reports remains in dispute. Some courts have recognized the power in very limited circumstances. *See, e. g., In re Application of Jordan,* 439 F.Supp. 199 (S.D.W.Va.1977) (such reports may be permissible, but they must be "of a general nature 'touching on conditions in the community;' they *cannot* be examples of the grand jury's accusing individuals of criminal misconduct through 'publicized inferences of guilt' "). Other courts and commentators have concluded that the grand juries have no such power at all. *E. g., Application of United Electrical, Radio & Machine Workers,* 111 F.Supp. 858 (S.D.N.Y.1953); 1 L. Orfield, *Criminal Procedure Under the Federal Rules* § 6.116 (1966 & Supp.1981).

**17.** Some *states* provide for grand jury investigations which are intended to produce reports and not indictments or presentments, but those states typically recognize that their provisions go well beyond what is permitted for federal grand juries. *See, e. g., People v. Superior Court of Santa Barbara County,* 13 Cal.3d 430, 436, 119 Cal.Rptr. 193, 196–97, 531 P.2d 761 (1975).

tion would be foreign to the federal judiciary as it now exists; even grand juries convened under Sections 3331–3334 retain the *power* to indict. *See United States v. Ceccerelli*, 350 F.Supp. 475 (W.D.Pa.1972). Whatever the merits of creating a non-indicting grand jury, we do not find in the general language of Rule 6 any expression of an intent to authorize an unprecedented institution such as this.

### V.

■ We recognize that an investigatory grand jury might serve a valuable function in the prosecutorial system of the Virgin Islands. In light of the serious crime problems existing in that and other jurisdictions, we are reluctant to deny the Islands the power to invoke an investigative device that elsewhere has served the legal system as a guardian of both social needs and individual rights.[18] Nevertheless, we are constrained by the absence of authority to institute such grand juries in the Virgin Islands. Although the creation of an investigatory grand jury, or even an indicting grand jury, might be salutary, it is not for the courts to institute such an entity without legislative direction. We must, therefore, defer to the Virgin Islands' legislature or the United States Congress to authorize for the Virgin Islands such grand juries as are deemed appropriate.

Accordingly, the petition for a writ of mandamus is denied.

GARTH, Circuit Judge, concurring.

I fully agree with the majority opinion's conclusion that mandamus should not issue to require Judge Christian to convene an investigatory grand jury in the Virgin Islands. I write separately because I believe that there are additional considerations which buttress the result reached by the majority.

My analysis of Rules 6 and 7 of the Federal Rules of Criminal Procedure leaves no doubt in my mind that these Rules provide no authority for the District Court of the Virgin Islands to convene an *investigatory* grand jury. Moreover, even if we had concluded that Rules 6 and 7 provided the authority claimed by the government, I would not issue the writ of mandamus because the government has failed to demonstrate that it had a "clear and indisputable" right to the issuance of such a writ.

### I.

In its petition to this court for a writ of mandamus, the government has asserted that Federal Rule of Criminal Procedure 6(a) authorizes the use of an *investigatory* grand jury in the Virgin Islands, a grand jury which can only investigate violations of federal law, but cannot indict. The government has not challenged the requirement that all offenses in the Virgin Islands must be prosecuted by information rather than by indictment. Instead the government has argued that this requirement—for prosecution by information—does not prevent the summoning of a grand jury for investigatory purposes only.

As Judge Adams has observed in the majority opinion, the government's argument, made over a period of time, has shifted gears. Originally, the government sought to convince Chief Judge Christian to convene a special investigatory grand jury under the authority of 18 U.S.C. § 3331(a) (1976). It was the government's position that this statute authorized the summoning of a grand jury to investigate "violations of federal law, including federal antitrust law,

---

18. We note that the United States Attorney is not completely without the means to uncover and prosecute antitrust violations in the Virgin Islands. Though statutes of the United States and the Virgin Islands withhold some powers which would be available to a federal grand jury—notably the authority in an investigation to compel the appearance of witnesses nationwide—the statutes do provide the United States Attorney with many of the powers that a grand jury would possess. For example, although there may be some doubt whether it extends to the prosecution of federal crimes, Title 4, Section 601 of the Virgin Islands Code provides for the issuance of subpoenas; Title 5, Section 654 of the Code provides for authority to compel testimony pursuant to a subpoena; and the United States Attorney can request the grant of immunity under the provisions of 18 U.S.C. § 6003.

in the importation, wholesale and retail sale of liquor in the United States Virgin Islands." (Letter of Justice Department addressed to Chief Judge Christian dated April 28, 1980.)

In response to that letter, Chief Judge Christian expressed his belief that the phrase "district court" used in § 3331(a) referred only to an Article III district court, and not to the District Court of the Virgin Islands, which is a territorial court created by Congress pursuant to Article IV, Section 3 of the Constitution. *See United States v. George*, 625 F.2d 1081, 1088–89 (3d Cir. 1980). Judge Christian then observed that Section 25 of the Revised Organic Act of the Virgin Islands, *see* 48 U.S.C. § 1615, and Rule 54(a) of the Federal Rules of Criminal Procedure both provide that all prosecutions in the District Court of the Virgin Islands (except as otherwise required by local law) shall be prosecuted by information. Finally, he observed that a grand jury never had been convened in the Virgin Islands and that the procedural machinery required to bring a grand jury into being did not exist.

In subsequent correspondence, Judge Christian suggested that the Justice Department persuade the Virgin Islands Legislature to enact a statute authorizing an investigatory grand jury. If that effort failed, the judge suggested that the Justice Department might utilize the special subpoena powers conferred on the U.S. Attorney for the Virgin Islands by the Virgin Islands Legislature.

It was at that point that the Justice Department abandoned all reliance on § 3331.[1] Instead, the Justice Department then asked that an *investigatory* grand jury be convened pursuant to Rule 6(a) of the Federal Rules of Criminal Procedure. When Chief Judge Christian refused to convene the grand jury sought by the Justice Department, the present petition for a writ of mandamus, pursuant to 28 U.S.C. § 1651, was filed.

The writ sought to have this court direct the District Court of the Virgin Islands to convene a grand jury for the limited purpose of investigation pursuant to Fed.R. Crim.P. 6(a). In its petition, the United States, after maintaining that mandamus was a proper remedy for the district court's refusal to summon an investigatory grand jury, asserted that enforcement of federal laws in the Virgin Islands would be "crippled" if investigatory grand juries could not

---

1. It is my belief that the government abandoned its § 3331 argument not only because the "district court" to which the statute refers necessarily excludes the District Court of the Virgin Islands, but also because an examination of §§ 3331–34 reveals that the mere existence of these statutes lends support not to the government's thesis but to the respondent's. For ease in reference I attach the relevant portions of these statutes as Appendix A to this opinion.

It should be observed that the special grand juries permitted under §§ 3331–34 can only be convened for the purpose of investigating criminal violations, and that such grand juries have the power to indict. The Senate report accompanying the Act states:

> Section 3332(b) defines the scope of the power of the special grand jury to investigate "offenses against the criminal laws of the United States. . . ." It reflects present law. See *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); *Blair v. United States*, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919). Collateral inquiry which results in a report is contemplated under section 3332. However, this section makes it clear that investigations are to be conducted only into

criminal offenses against the United States, and not for the sole purpose of report writing.

Consequently, even under §§ 3331–34, a grand jury cannot be convened solely for the purpose of investigating. As the Senate Report indicates, the main function of a special grand jury is the same as a Rule 6 grand jury: to investigate crime and to determine whether indictments should be returned. Its reporting power, limited to noncriminal misconduct and organized crime conditions, is "collateral."

The special grand jury in the Virgin Islands sought by the government could only be authorized for "the sole purpose of report writing," since section 25 of the Revised Organic Act of the Virgin Islands, 48 U.S.C. § 1615, provides for prosecution by information rather than by indictment, unless otherwise required by local law. Thus, the summoning of this *purely* investigatory grand jury would clearly contravene the intent of Congress in enacting 18 U.S.C. §§ 3331–34.

Therefore, I am convinced, as the government must have been, that §§ 3331–34 provide no authority for summoning an investigatory grand jury in the Virgin Islands.

be convened there. The United States then claimed that Rule 54(a) of the Federal Rules of Criminal Procedure and 48 U.S.C. § 1615 (1976) [2] (Section 25 of the Virgin Islands Revised Organic Act) only preclude the initiation of *prosecution* by a grand jury. Rule 54(a) reads:

(a) Courts. These rules apply to all criminal proceedings in the United States District Courts; in the District Court of Guam; in the District Court of the Virgin Islands; and (except as otherwise provided in the Canal Zone Code) in the United States District Court for the District of the Canal Zone; in the United States Courts of Appeals' and in the Supreme Court of the United States; *except that all offenses shall continue to be prosecuted in the District Court of Guam and in the District Court of the Virgin Islands by information as heretofore except such as may be required by local law to be prosecuted by indictment by grand jury.*

(emphasis added)

Since the Federal Rules of Criminal Procedure apply in the District Court of the Virgin Islands, the United States contended "Rule 6(a) powers" extend to the Virgin Islands to the extent that these powers provide for an *investigatory* grand jury which has no power of indictment.

According to the petition of the United States:

It is possible "to give effect to both" provisions by reading them as allowing the calling of investigative grand juries in the Virgin Islands under Rule 6(a), but requiring, pursuant to Rule 54(a) and 48 U.S.C. § 1615, prosecution by information. While grand juries traditionally perform both investigative and accusatory functions, Congress on occasion contemplates that grand juries might investigate crimes without issuing indictments. See, e. g., Rule 7(a) of the Federal Rules of Criminal Procedure; 18 U.S.C. § 3333.[4] Grand jury investigative authority is deeply ingrained in American jurisprudence, see *United States v. Calandra*, 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–618, 38 L.Ed.2d 561 (1974); *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972); *Blair v. United States*, 250 U.S. 273, 280, 282, 39 S.Ct. 468, 470, 63 L.Ed. 979 (1919); *Hale v. Henkel*, 201 U.S. 43, 64–65, 26 S.Ct. 370, 374–375, 50 L.Ed. 652 (1906), and it is implausible that Congress intended indirectly to abrogate this power in the Virgin Islands by insisting on prosecution by information.

---

[4] Investigatory grand juries are also permitted in 18 states in which the prosecutor may proceed by information. See *Branzburg v. Hayes*, 408 U.S. 665, 688 n. 25, 92 S.Ct. 2646, 2660 n. 25, 33 L.Ed.2d 626 (1972).

Petition for the United States at 4–5.

In its final argument, the United States relied on the legislative history of the 1954 amendment to Section 25 of the Revised Organic Act of the Virgin Islands, which provides for continued prosecution by information. The main purpose of this amendment, the United States argued, was to prevent the release of prisoners who, up until that time, had not been indicted by (or waived indictment by) a grand jury. The government's version of the legislative history revealed no hostility to the grand jury as an institution, and more particularly, to an investigatory grand jury.

The answering and supplementary briefs of the United States essentially embellished its original reasoning. The government noted that the Jury Selection and Service Act, 28 U.S.C. §§ 1861, *et seq.* (1976), which provides the methods for selecting both grand and petit juries, applies to the District Court of the Virgin Islands, 28 U.S.C. § 1869(f) (1976). The United States argued that these provisions contemplate the use of a grand jury in the Virgin Islands. In its supplementary brief, the government, ex-

---

**2.** Section 1615 provides that in the District Court of the Virgin Islands:

All offenses shall continue to be prosecuted in the District Court by information as heretofore except such as may be required by local law to be prosecuted by indictment by grand jury.

plained why available, alternative means of investigation—means which the government apparently never attempted to pursue—were and are less satisfactory than a grand jury investigation.

In essence, therefore, the government's bottom line is that Rule 6(a) and Rule 7 of the Federal Rules of Criminal Procedure provide the only source of authority available for the convening of an investigatory grand jury.

## II.

I observe that in defining the role of an indicting grand jury convened under Rule 6, the courts have not limited themselves to the legislative history of the Fed.R.Crim.P., but have also looked to common law powers and the fifth amendment. *United States v. Calandra*, 414 U.S. 338, 342–44, 94 S.Ct. 613, 616–18, 38 L.Ed.2d 561 (1974). Judge Adams has explored these sources of authority in section III of the majority opinion. I make no comment with respect to that discussion because of the context in which the issue of grand jury authority has been presented to us. The government, as Judge Adams and I both note, has restricted its entire argument to Rules 6 and 7. This being so, in our disposition of the government's petition, we need go no further than an analysis limited to just those Rules.

## A.

As Judge Adams and I have noted, the full weight of the government's argument rests on Rules 6 and 7 as the source of authority for convening an *investigatory* grand jury in the Virgin Islands. Even were we to limit our analysis solely to the rules relied upon by the government, it follows inexorably that an *investigatory* grand jury is not authorized under Rules 6, 7. Rule 6 does not refer to an "investigatory" grand jury. It does not provide for a grand jury to write reports or for a grand jury to return presentments.

Rule 6(a) reads:

(a) Summoning Grand Juries. The court shall order one or more grand juries to be summoned at such times *as the public interest requires.* The grand jury shall consist of not less than 16 nor more than 23 members. The court shall direct that a sufficient number of legally qualified persons be summoned to meet this requirement.

Certainly, the language of this rule does not recognize the existence of any sort of *investigatory* grand jury. The phrase, "as the public interest requires," which I have underlined in the text above can only have reference to, and thus modify, the *times* when a grand jury may be summoned—not the *type* of grand jury that can be summoned. Notes of Advisory Committee, 18 U.S.C.A. Fed.R.Crim.P. 6 at 268.

The government has pointed to no legislative history or case law that indicates that an *investigatory* grand jury can be convened under Rule 6(a). None of the authorities referred to by the United States supports the proposition that Rule 6(a) authorizes an *investigatory* grand jury which has no power of indictment. None lend any basis to its theory that "Congress has granted grand juries in the Virgin Islands a limited role: to investigate crimes but to leave prosecution in the hands of the prosecutors." (United States Answering Brief at 2).

Nor can the government place any reliance on Rule 7(a) of the Federal Rules of Criminal Procedure,[3] which it cites in support of its theory that an *investigatory* grand jury may be convened pursuant to Rule 6. Rule 7(a) is concerned only with indictments and informations. Thus, as might be expected, the Supreme Court

---

**3.** Rule 7(a) reads:

(a) Use of Indictment of Information. An offense which may be punished by death shall be prosecuted by indictment. An offense which may be punished by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information. Any other offense may be prosecuted by indictment or by information. Any information may be filed without leave of court.

cases cited by the United States only make reference to an *indicting* grand jury.[4]

Indeed, additional examination into Rules 6 and 7 completely refutes the government's arguments that the Rules provide any authority for convening an investigatory grand jury. Rule 6 appears under a heading which reads "III. Indictment and Information." This heading alone indicates that only a grand jury with indicting powers could be summoned under Rule 6. Federal Rule of Criminal Procedure 7 delineates the use of an indictment for a grand jury convened under Rule 6. Rule 7 makes no provision for a grand jury that only has *investigatory* powers, nor does it provide for a grand jury to write reports or issue presentments.

### B.

The Advisory Committee Note to Fed.R. Crim.P. 7 states that this Rule gives effect to the fifth amendment grand jury clause. 18 U.S.C.A. Fed.R.Crim.P. at 388. In addition, courts have looked to the fifth amendment as well as to English common law in delimiting the role of an indicting grand jury convened under Rule 6. *See, e. g., United States v. Calandra*, 414 U.S. 338, 342–43, 94 S.Ct. 613, 616–18, 38 L.Ed.2d 561 (1979). If, as these authorities suggest, the Federal Rules of Criminal Procedure implement powers of the grand jury implied from the fifth amendment, then it cannot be that these same Rules constitute the sole source of a court's authority to convene a grand jury. The Rules only provide the procedures that govern grand juries, which have been convened by virtue of a pre-existing authority.

It cannot be disputed that the fifth amendment does not mandate the use of a purely *investigatory* grand jury. Nor can it be said that an *investigatory* grand jury arises from a necessary implication of the fifth amendment. The *investigatory* grand jury which the government urges may be

convened under Rule 6, actually appears to be at odds with the requirements of the fifth amendment and the provisions implementing it. A federal grand jury acts as both a sword and a shield. *See United States v. Cox*, 342 F.2d 167, 186 (5th Cir.) (en banc) (Wisdom, J., concurring specially), *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965). It serves as a means to bring to trial those suspected of crimes and serves as a protection against malicious and harassing prosecution. *See, e. g., United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974). This latter protective function reflects the essential purpose of the fifth amendment in safeguarding the rights of an individual. The fifth amendment was designed for the benefit of the accused: to afford a safeguard against oppressive action of a prosecutor or a court. *United States v. Cox*, 342 F.2d 167, 170 (5th Cir.) (en banc) (opinion of Jones, J.), *cert. denied*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

An *investigatory* grand jury which has no power of indictment serves little, if any, protective purpose. It cannot refuse to indict an individual. To the extent that the role of an *investigatory* grand jury is defined by the government, it apparently is designed only to ferret out crime. Thus, to authorize the summoning of an *investigatory* grand jury under the Federal Rules of Criminal Procedure, which were designed to implement the fifth amendment, would be to ignore the essential protective function of that constitutional provision. *See United States v. Briggs*, 514 F.2d 794, 803 (5th Cir. 1975).

Moreover, as we have observed, since these Rules implement the fifth amendment, it follows that in those instances where these fifth amendment protections are inapplicable, the federal rules providing for grand juries are also inapplicable. This Court has consistently held that the fifth amendment's grand jury protection does not extend to prosecutions initiated in the

---

**4.** *United States v. Calandra*, 414 U.S. 338, 343–344, 94 S.Ct. 613, 617–618, 38 L.Ed.2d 561 (1974); *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972);

*Blair v. United States*, 250 U.S. 273, 280, 282, 39 S.Ct. 468, 470, 63 L.Ed. 979 (1919); *Hale v. Henkel*, 201 U.S. 43, 64–65, 26 S.Ct. 370, 374–375, 50 L.Ed. 652 (1906).

Virgin Islands. *See, e. g., Government of Virgin Islands v. Dowling*, 633 F.2d 660, 667 (3d Cir.) (Maris J.), *cert. denied*, 449 U.S. 960, 101 S.Ct. 374, 66 L.Ed.2d 228 (1980); *Rivera v. Government of the Virgin Islands*, 375 F.2d 988 (3d Cir. 1967). It is thus not surprising that the Revision Notes to 5 V.I. § 3581 (1967) state that Rule 6 and Rule 7(a), (b) of the Federal Rules of Criminal Procedure do not apply in the Virgin Islands.

Thus, there can be no basis for asserting that Rules 6 and 7 may serve as authority for the convening of an *investigatory* grand jury in the Virgin Islands.

### C.

Indeed, I search in vain for the institution called the investigatory grand jury, an institution which the government now urges us to create out of whole cloth. Of course, grand juries have investigatory powers. These powers though are a necessary adjunct to their power to indict. The function of a grand jury is only to decide whether to indict or not to indict. 1 C. Wright, Federal Practice and Procedure, § 110 at 197 (1969). Yet, without any authority, the government would have us sever the subsidiary investigatory function of the grand jury from its other functions and create a new creature.

I agree with the majority opinion that only the Congress or the Virgin Islands Legislature may establish an investigatory grand jury in the Virgin Islands. I emphasize that it is for the legislative, not the judicial, branch to decide whether to create such an institution. If we were to adopt the reasoning of the government we would overturn the common understanding in the Virgin Islands concerning the nature of its own criminal investigation system. No grand jury has ever been convened in the Virgin Islands. We were told at oral argument that not only is the apparatus lacking to convene a grand jury, but that inordinate practical problems would be encountered if a grand jury were to be ordered. I do not think we should ignore the Virgin Islands

practice and understanding without clear authority from Congress.

### III.

Even had this panel reached a contrary conclusion as to the scope of Rules 6 and 7, and had consequently held that these Rules did indeed constitute authority for the summoning of an investigatory grand jury in the Virgin Islands, I nevertheless would have refused to issue the writ of mandamus sought by the government.

It must be remembered that the writ of mandamus is a drastic remedy that will "issue only in extraordinary circumstances . . .", *Kerr v. United States District Court*, 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–2124, 48 L.Ed.2d 725 (1976). The party seeking mandamus has "the burden of showing that its right to issuance of the writ is 'clear and indisputable.'" *Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967) *quoting Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953). *See also Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Kerr, supra*, 426 U.S., at 403, 96 S.Ct. at 2124; *United States v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286, 287, 43 L.Ed. 559 (1899); *United States v. Cuthbertson*, 651 F.2d 189 at 193 (3d Cir. 1981).

The burden is on the petitioner, here the United States, to show that it has a "clear and indisputable" right to the writ. In addition, our issuance of the writ is largely discretionary. *Kerr, supra*, 426 U.S., at 403, 96 S.Ct. at 2124. Thus, in my opinion, the party seeking a writ of mandamus must first provide an explicit and detailed explanation of the relief which it seeks. Mandamus relief should be unavailable if the party seeking it furnishes only a vague description of the duty which the district court should be compelled to exercise. Yet here the United States has not only failed to provide us with a clear explanation of the relief which it desires, but it has also failed to outline the precise powers and functions of the investigatory grand jury which it

seeks, and the necessary procedural safeguards under which it should operate.[5]

Although the United States does refer to judicial and statutory authority describing various possible functions of an investigatory grand jury, the government does not employ these authorities to delineate the functions of, or provide for, the powers of the investigatory grand jury that it has requested. Whatever the government may envisage the powers and functions of an investigatory grand jury to be, all I can gather from the government's brief and petition is that there is one function and power such a grand jury would not have— the power to indict. As a consequence, we have been provided with no description of the nature, functions or powers of the investigatory grand jury which the government desires the district court to summon.

I do not see how we could order the district court to convene such a grand jury of such an unknown nature and such unknown powers. Of course, this court can define what *we* believe to be the appropriate powers of a federal *investigatory* grand jury, but I do not believe that to be our role. Hence, even if I were to accept the United States's assertion that an *investigatory* grand jury could be empanelled under Rule 6(a), I would still refuse to grant the government's petition for a writ of mandamus because no functions, powers, or safeguards concerning such a grand jury have been identified, let alone authorized. In failing to do so, the government, in my opinion, has fallen far short of demonstrating a "clear and indisputable" right to mandamus relief.

---

5. I observe that when Congress authorized "special grand juries" under 18 U.S.C. § 3331, it took pains to include in the statutory scheme, the powers, and functions of such grand juries. Significantly, Congress also included a number of procedural safeguards. For example, 18 U.S.C. § 3333 prohibits the district court from making a report public unless the report is supported by a preponderance of the evidence, persons named in the report have been given an opportunity to testify and call witnesses, and public officials named are given an opportunity to file an answer which becomes an appendix to the report.

## APPENDIX A

**18 U.S.C. § 3331.  Summoning and term**

(a) In addition to such other grand juries as shall be called from time to time, each district court which is located in a judicial district containing more than four million inhabitants or in which the Attorney General, the Deputy Attorney General, or any designated, Assistant Attorney General, certifies in writing to the chief judge of the district that in his judgment a special grand jury is necessary because of criminal activity in the district shall order a special grand jury to be summoned at least once in each period of eighteen months unless another special grand jury is then serving. The grand jury shall serve for a term of eighteen months unless an order for its discharge is entered earlier by the court upon a determination of the grand jury by majority vote that its business has been completed. If, at the end of such term, or any extension thereof, the district court determines the business of the grand jury has not been completed, the court may enter an order extending such term for an additional period of six months. No special grand jury term so extended shall exceed thirty-six months, except as provided in subsection (e) of Section 3333 of this chapter.

These grand juries have the duty "to inquire into offenses against the criminal laws of the United States," 18 U.S.C. § 3332 (1976), and are authorized to submit a report:

(1) concerning noncriminal misconduct, malfeasance, or misfeasance in office in-

---

Similarly, when the Commonwealth of Pennsylvania enacted legislation providing for "investigating grand juries," it set out in great detail the powers, composition, and functions of such institutions and provided as well for safeguards in connection with their operation. *See* Pa.Cons.Stat.Ann. §§ 4541–53.

It cannot be disputed that neither Rule 6 nor Rule 7, nor for that matter any other statute or Rule, provide the federal system with the structure for an investigatory grand jury. Nor do they provide for the powers or functions that such a grand jury would possess.

volving organized criminal activity by an appointed public officer or employee as the basis for a recommendation of removal or disciplinary action; or

(2) regarding organized crime conditions in that district.

18 U.S.C. § 3333(a) (1976).

Before such a report is permitted to be published, a number of procedural safeguards must be met.

To the extent they are not inconsistent with §§ 3331–33, the provisions of the United States Code and Federal Rules of Criminal Procedure applicable to "regular grand juries" are also applicable to special grand juries. 18 U.S.C. § 3334 (1976).